Jay A. ZEFFIRO, individually and on behalf of all other persons similarly situated

v.

FIRST PENNSYLVANIA BANKING AND TRUST COMPANY.

Harry M. BERNARD, Jr., on behalf of himself and all others similarly situated

v.

FIRST PENNSYLVANIA BANK, N.A., and Capital First Corporation.

Civ. A. Nos. 78–3294, 78–4316.

United States District Court, E.D. Pennsylvania.

Jan. 6, 1983.

Richard A. Finberg, Michael P. Malakoff, Abraham C. Reich, Philadelphia, Pa., James P. Larkin, Joseph W. Anthony, Minneapolis, Minn., for plaintiff.

Edward F. Mannino, Mark J. Levin, Philadelphia, Pa., for First Pennsylvania Bank.

Alexander Kerr, Philadelphia, Pa., for Capital First Corp.

Edward M. Dunham, Jr., Philadelphia, Pa., for Philip M. Comerford, Harmon S. Spolan and Spector Cohen Gadon & Rosen.

Neil E. Jokelson, Philadelphia, Pa., for C. Lawrence Rutstein.

Arthur J. Schwab, Pittsburgh, Pa., Christopher K. Walters, Philadelphia, Pa., for Edward E. Cohen.

Richard M. Jordan, Philadelphia, Pa., for Robert C. Arthurs & Babbitt, Meyers & Co.

Barry S. Augenbraun, Philadelphia, Pa., for Laventhol & Horwath.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the Court is a motion for class action certification in consolidated actions brought by injured investors Harry M. Bernard, Jr. and Jay A. Zeffiro, both of whom purchased debentures issued in 1972 by Capital Equipment Leasing Corporation, a predecessor of defendant Capital First Corporation ("Capital"). The debentures were issued in accordance with a trust indenture agreement which named First Pennsylvania Banking and Trust Company, a predecessor of defendant First Pennsylvania, N.A. ("First Pennsylvania"), as indenture trustee. The terms of the indenture, and concomitantly the duties of First Pennsylvania, were partially regulated by the Trust Indenture Act of 1939, 15 U.S.C. § 77aaa *et seq.*[1] On December 1, 1976, Capital defaulted on its obligation under the indenture to pay interest to the debenture holders, and on December 11, 1978, filed a petition for reorganization under Chapter XI of the Bankruptcy Act. Shortly thereafter, plaintiffs Zeffiro and Bernard filed separate suits, which were later consolidated.

Plaintiffs' actions allege a course of conduct on the part of Capital and First Pennsylvania in violation of the duties imposed by the indenture provisions, including violation of those duties required to be included in the indenture under the Trust Indenture Act. Plaintiffs also assert various pendent state law claims for breach of contract, intentional tort, negligence, and breach of fiduciary duty. Plaintiffs seek remedies consisting of an accounting, damages, and injunctive or declaratory relief.

The proposed class is identified as follows:

All persons including corporations, partnerships, trusts or other similar entities, except any third party defendant, who on December 1, 1976 owned Capital First Corporation (formerly Capital Equipment and Leasing Corporation) nine percent (9%) subordinated debentures due 1982.

Defendant First Pennsylvania has asserted several arguments in opposition to the plaintiffs' motion for class action certification. These require some discussion, although for the reasons set out below, the motion will be granted.

I. Requirements of Rule 23(a)

Rule 23(a) prescribes four prerequisites for a suit to be maintained as a class action:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

■ The first of these requirements is undoubtably met in the present case since there are over 300 potential members of this class. The defendants contend that of

---

1. In *Zeffiro v. First Pennsylvania Banking and Trust Co.,* 623 F.2d 290 (3d Cir.1980), *cert. den.,* —— U.S. ——, 102 S.Ct. 2295, 73 L.Ed.2d 1299 (1982), the Third Circuit, pursuant to an interlocutory appeal under 28 U.S.C. § 1292(b), affirmed this Court's determination at 473

F.Supp. 201 (E.D.Pa.1979) that the Trust Indenture Act of 1939, 15 U.S.C. § 77aaa *et seq.,* creates a federal cause of action in favor of debenture holders for breach of the provisions of a trust indenture when those provisions are mandated by the Act.

this number, 80% have indicated their lack of interest in the litigation, and thus, in actuality, the class consists of 51 members at best. Defendants rely on the fact that "only 51 of the 325 potential class members" agreed to participate in an Agreement to Forbear which was solicited by plaintiff-Bernard's law firm in 1977.[2] Defendants argue that because joinder of 51 class members is not impracticable, certification should be denied. The Court disagrees. First, the Court is not convinced that evidence of potential class members' failure to execute an agreement to *forbear* from either suing Capital First or assisting a trustee in such a suit, warrants defendants' conclusion regarding potential class members' interest in this litigation. Second, even assuming that the class consisted of only 51 members, while 51 may not seem like an unwieldy number, the Court sees no reason to encumber the judicial process with 51 lawsuits if one will adequately and fairly represent all interests of the members of plaintiff class. *See Philadelphia Electric Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452, 463 (E.D.Pa.1968) (certifying class of 25).

The requirement of Rule 23(a)(2) presents no difficulty as defendants have stipulated, and the Court has independently concluded, that this requirement is met. (Brief of Defendant First Pennsylvania Bank, N.A. in Opposition to Plaintiffs' Motion for Class Action Determination, p. 21). The acts or omissions of defendants raise several legal and factual questions which will necessarily be answered in the same way for each class member. Defendants' responsibilities were the same with respect to each debenture holder, and defendants' actions affected all class members in the same manner. In this context, a unitary adjudication would best serve the interest of judicial economy.

The remaining prerequisites specified by Rule 23(a) are that "(3) the claims ... of the representatives are typical of the claims ... of the class, and [that] (4) the representative parties will fairly and adequately protect the interests of the class." Thus, it is necessary to decide whether the factual and legal issues common to the class are typified by claims of the named plaintiffs, and if so, whether the named plaintiffs can adequately represent the interests of the class.

The Rule 23(a)(3) typicality prerequisite guarantees that the class representative's claim fairly encompasses the issues common to the class. To some degree the typicality requirement shadows the 23(a)(2) requirement that there be questions of law or fact common to the class. *See General Telephone Co. of Southwest v. Falcon,* —— U.S. ——, —— n. 13, 102 S.Ct. 2364, 2371 n. 13, 72 L.Ed.2d 740 (1982) (commonality and typicality requirements of Rule 23(a) tend to merge). The difference is one of focus. Rule 23(a)(2) assures that there is a shared interest among the class in resolving a certain issue. Rule 23(a)(3) examines whether the named representative's particular claim presents that issue on behalf of the plaintiff class. The relative simplicity of the typicality requirement may be summed up as follows; a plaintiff's claim is typical if it arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory. 1 H. Newberg, *Class Actions* § 1115b (1977); *see, e.g., Serritella v. Engelman,* 339 F.Supp. 738 (D.N.J.1972), *aff'd,* 462 F.2d 601 (3d Cir.1972) (plaintiffs' claims typical of class as issue of noncompliance with regulation predominated over minor factual differences); *Gerstle v. Continental Airlines Inc.,* 50 F.R.D. 213, 219 (D.Co.1970) ("Although varying fact patterns may underlie individual claims it is alleged that the same unlawful conduct was directed at plaintiff and those she represents. This is sufficient to meet the common question and typicality requirements of the rules."). The heart of this require-

---

**2.** The Agreement to Forbear established a Creditors' Committee to represent the interests of Capital First debenture holders who joined in the Agreement. In exchange for a voice in the business affairs of Capital First, signatories agreed not to sue Capital First or to assist any trustee, such as First Pennsylvania, in a suit against Capital First (Exhibit H, Plaintiffs' Reply Brief in Support of Motion for Class Action Certification).

ment is that plaintiff and each member of the represented group have an interest in prevailing on similar legal claims. Assuming such an interest, particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render his or her claims atypical. *See Serritella v. Engelman, supra* (factual differences did not render plaintiffs' claims atypical); *Simon v. Westinghouse Elec. Corp.,* 73 F.R.D. 480 (E.D.Pa.1977) (questions relating to damages were peripheral to central issue in securities action); *Richardson v. Hamilton International Corp.,* 62 F.R.D. 413, 419–420 (E.D.Pa.1974) (consideration of affirmative defense on the issue of class action certification would be an improper intrusion into the merits of the case).

In the present case, the alignment of interests between the named plaintiffs' claims and those of other class members is obvious. The class representatives generally seek to prove that they are entitled to various forms of relief as a result of a course of conduct on the part of First Pennsylvania and Capital First, which completely disregarded the interests of the debenture holders. All of the potential class members have an interest in proving defendants' liability under the named plaintiffs' theory. Hence, the claims of the class representatives fit squarely within the Rule 23(a)(3) typicality requirement.

Defendants contend that plaintiff Bernard's execution of the Agreement to Forbear [3] presents a unique defense which renders his claim atypical. Defendants rely on *Minersville Coal Co. v. Anthracite Export Assoc.,* 55 F.R.D. 426, 429 (M.D.Pa.1971) in which the court refused to certify the proposed class because the would-be representatives had executed releases in favor of certain defendants. The *Minersville* ruling, however, does not support defendants' position. The *Minersville* court did not hold that the very existence of the releases precluded the named plaintiffs' claims from being typical. Rather, the court was sensi-

tive to a potential conflict of interest resulting from a clause in the releases which provided for indemnification of the defendants. Since recovery against the defendants by any of the non-indemnifying class could have subjected the named plaintiffs to liability, the court was justifiably concerned with the ability of the named plaintiffs to protect the class's interest. The present case does not present such a conflict of interest and is thus distinguishable from *Minersville.*

The defendants' contention that the existence of a unique defense renders a representative's claim atypical has been rejected where the overriding question common to the class is "logically prior" to special defenses against the named plaintiff. *State Teachers Retirement Board v. Fluor Corp.,* 73 F.R.D. 569 (S.D.N.Y.1976). *See also Richardson v. Hamilton International Corp., supra,* 62 F.R.D. at 419–20 (E.D.Pa. 1974): ("To the extent that [nonreliance] is an affirmative defense, any consideration of the issue on the class action certification would be an improper intrusion into the merits of the case.") (citing *Kahan v. Rosenstiel,* 424 F.2d 161 (3d Cir.), *cert. den. sub. nom., Glen Alden Corp. v. Kahan,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970)). The rationale underlying this view is sound. Where, as here, an alleged defense may affect the individual's ultimate right to recover, but it does not affect the presentation of the case on the liability issues for the plaintiff class, that defense should not make a plaintiff's claim atypical. In view of the above and having given careful consideration to the pleadings, briefs, and presentations of counsel at oral argument, the Court concludes that the claims of the named plaintiffs are typical of those of the class they seek to represent.

The final requirement of Rule 23(a) assures that the representative parties adequately protect the interests of the class members. Adequate representation is a function of two factors: (1) adequate legal representation, and (2) absence of interclass

---

**3.** *See* note 2, *supra.*

antagonism or conflict.[4] *See Dorfman v. First Boston Corp.,* 62 F.R.D. 466 (E.D.Pa. 1973).

With respect to the second factor, First Pennsylvania has alleged interclass antagonism based on the following: (a) Mr. Zeffiro sold his debentures in 1977 and thus has interests antagonistic to those of current debenture holders who have a stake in the future financial position of Capital First, and (b) Mr. Bernard has chosen to sue Capital First rather than accept its offer to exchange his debentures for equity, and thus has interests antagonistic to those of class members who hope to recover their investment by taking equity in Capital First. Again, however, defendants' position is without merit. First, there is no evidence of a real disagreement among the debenture holders with respect to the propriety of maintaining this suit. Second, both former and current debenture holders would benefit from an award of damages against the trustee. To the extent that certain class members have an interest in not asserting claims against *Capital First,* a subclass may be appropriate.

■ Defendant also challenges the adequacy of plaintiffs' counsel. Defendant vigorously asserts that certain conduct on the part of the law firm of Larkin, Hoffman, Daly & Lindgren, one of the three firms representing plaintiffs in this litigation, renders it inadequate to represent the class in the manner contemplated by Rule 23(a)(4).[5] While defendant does not contend that Larkin, Hoffman violated any specific ethical canon or rule, defendant suggests that an "appearance of impropriety" exists as a result of, among other things, Larkin, Hoffman's alleged solicitation of Mr. Bernard, its communications with members of the proposed class, its apparent dual representation of Capital First and the Hormel Employees Credit Union ("Hormel") in an action against Capital First on debentures of another series, and its representation of both secured and unsecured creditors on the Creditors' Committee. Without here addressing each of the specific facts set forth by defendant in support of its contentions regarding Larkin, Hoffman, suffice it to say that having given careful consideration to the arguments of both sides as extensively set forth in their briefs and at oral argument, the Court concludes that defendant's position is without merit. First, there was nothing improper in Larkin, Hoffman's contact with the 1982 debenture holders in 1977 on behalf of Hormel and Capital First in connection with the Agreement to Forbear. That this may have caused Mr. Bernard to seek out Larkin, Hoffman in order to pursue litigation against the present defendants does not convert the original contact into solicitation on the part of Larkin, Hoffman. Second, on the issue of dual representation of Hormel and Capital First, the Court finds that the evidence in the form of certain bills for legal services from Larkin, Hoffman to Capital First, meetings between Larkin, Hoffman and Capital First, and two form letters from Larkin, Hoffman to Capital First thanking Capital First "for entrusting your legal matters to Larkin,

---

4. Interclass antagonism or conflict may be analysed under Rule 23(a)(3), the typicality requirement, or Rule 23(a)(4), the adequacy requirement. *Horton v. Goose Creek Independent School Dist.,* 677 F.2d 471, 489 n. 47 (5th Cir.1982). *See* 1 Newberg, *Class Actions* §§ 1115a, 1115f (1977); 7 C. Wright & A. Miller, *Federal Practice and Procedure* §§ 1768, 1769 (1972). The typicality and adequacy requirements are overlapping to the extent that demanding typicality on the part of a representative helps assure his adequacy as a representative. However, analysis of the question of interclass antagonism under the adequacy requirement is preferable, because as each class member has the claim asserted by plaintiffs, the plaintiffs' claims *are* typical. The real question is whether, typicality aside, pursuit of the interests of the class representatives will be at the expense of the interests of remaining class members.

5. Three law firms have been engaged to represent plaintiffs in the present action. Representing plaintiff Zeffiro, as well as the proposed class, is the Pittsburgh firm of Berger, Kapetan, Malakoff & Meyers. Representing plaintiff Bernard, as well as the proposed class, is the Philadelphia firm of Fox, Rothschild, O'Brien & Frankel, and the Minneapolis firm of Larkin, Hoffman, Daly & Lindgren, Ltd.

Hoffman....," merely reflects activity in connection with the Agreement to Forbear, the expenses for which Capital First agreed to assume. Third, the January 19, 1979 Creditors' Committee communication with the 1982 debenture holders, which informed those holders who had executed the Agreement to Forbear that Capital First had filed for bankruptcy and that the Creditors' Committee had terminated, was not suggestive or improper. To the contrary, the letter was written on plain, non-letterhead stationery, and did not indicate either Messrs. Daly or Giberson's status as attorneys, or their connection with Larkin, Hoffman. Fourth and last, the Court is not convinced that the Creditors' Committee's representation of both secured and unsecured debenture holders involved a conflict of interest as claimed by First Pennsylvania. The Committee's primary purpose was to liquidate Capital First's indebtedness in a manner which was in the best interests of the debenture holders who became parties to the Agreement. The statement accompanying the Agreement itself pointed out that certain classes of debenture holders were secured while others were unsecured and "[i]n the event that the Committee is successful in having payments made to the debenture holders who are party to the Agreement, the Committee is obligated to give full effect both to the priority of claims and to the security interests given the holders of the various classes of the Company's debentures in their respective trust indentures." (Statement Accompanying Agreement to Forbear, ¶ 10).

First Pennsylvania apparently takes the position that the mere fact that the Creditors' Committee simultaneously represented different classes of debenture holders, some of which had priority over others, involved a representation of conflicting interests by Larkin, Hoffman, as counsel to the Committee, which creates an appearance of impropriety in having Larkin, Hoffman act as plaintiffs' counsel in the present suit. The Court cannot agree. Any conflict arising out of such a "dual representation" is de minimis. In short, the Court is not at all persuaded that there is substance behind defendant's allegation of "an intricate web of overlapping and at least potentially conflicting interests which disqualify (sic) [Larkin, Hoffman] from serving as attorneys for the purported class ...." (Brief of Defendant First Pennsylvania Bank, N.A. In Opposition to Plaintiffs' Motion for Class Action Determination, at 14). Moreover, the experience of plaintiffs' counsel as well as their performance at all prior stages of this action, including the interlocutory appeal, rebuts defendant's position that the interests of the proposed class will not be protected by Larkin, Hoffman. On the contrary, the Court finds that plaintiffs' counsel are experienced, qualified, and demonstrably able to conduct the litigation.

In sum, the Court is satisfied that all the prerequisites of Rule 23(a) are met. Thus, the next question to be considered is whether plaintiffs' action is maintainable under at least one of the subsections of Rule 23(b). Plaintiffs propose that subsections (b)(1)(B), and (b)(3) are applicable.

## II. Requirements of Rule 23(b)

The Court agrees with plaintiffs that certification of the present case is appropriate under Rule 23(b)(1)(B). Subdivision (b)(1)(B) is designed to be used in situations where judgment in a non-class action by an individual member of the class might have an adverse effect on other members' interests. In such a case, the other members' interests should be represented in the one action. The Notes of the Advisory Committee on Rules suggest that (b)(1)(B) certification is appropriate "in an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a larger class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed.R. Civ.P. 23(b)(1)(B) advisory committee note (citing *Boesenberg v. Chicago T. & T. Co.,* 128 F.2d 245 (7th Cir.1942); *Citizens Banking Co. v. Monticello State Bank,* 143 F.2d 261 (8th Cir.1944); *Redmond v. Commerce Trust Co.,* 144 F.2d 140 (8th Cir.1944), *cert. denied,* 323 U.S. 776, 65 S.Ct. 187, 89 L.Ed. 620 (1944); *York v. Guaranty Trust Co.,* 143

F.2d 503 (2d Cir.1944), rev'd on grounds not here relevant, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)). The present case fits squarely within the above description. As part of their relief, the plaintiffs have requested an accounting by defendant First Pennsylvania, and injunctive or declaratory relief so as to require First Pennsylvania to: (1) hold in trust for the benefit of the class all monies or properties received by First Pennsylvania from Capital; and (2) establish a special account for the joint benefit of plaintiffs and First Pennsylvania in accordance with § 6–13 of the Indenture and the requirements of 15 U.S.C. § 77kkk. The parallel between the Advisory Committee's example and the present action leads the Court to conclude that a (b)(1)(B) certification should be granted. Additionally, the Court notes that a decision allowing the remedies requested by plaintiffs would necessarily create rights in the resulting pool of funds on the part of all other class members. Since it cannot be said that all of the claims of the individual plaintiffs could be satisfied in full from this finite fund, this is the type of context to which Rule 23(b)(1)(B) is applicable. *See Esler v. Northrop Corp.,* 86 F.R.D. 20, 38 (W.D.Mo. 1979); *Coburn v. 4–R Corp.,* 77 F.R.D. 43 (E.D.Ky.1977); *Walker v. City of Houston,* 341 F.Supp. 1124, 1131 (S.D.Tex.1971); *Berman v. Narragansett Racing Association Inc.,* 48 F.R.D. 333 (D.R.I.1969); 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1774 (1972).

Defendant argues that *Fox v. Prudent Resources Trust,* 69 F.R.D. 74 (E.D.Pa. 1975), precludes certification of the present suit under Rule 23(b)(1)(B). In *Fox,* a limited partner brought a class action against the sole general partner in an investment program on behalf of all of the limited partners. The complaint alleged that defendant's conduct had caused a decline in value of certain stock held in trust by defendant for the benefit of the limited partners. In his class action certification motion, plaintiff argued that suit could be maintained under Rule 23(b)(1)(B) because the court's disposition regarding the stock held in trust would necessarily affect every member of the class. Although the court conceded that this was true, (b)(1)(B) certification was denied because the court concluded that the damage plaintiff claimed was primarily monetary, and the facts suggested that all the claimed damages could be paid in full.

Although the decline in value theory of *Fox* is similar to that of the case at bar, the crux of the decision not to certify under (b)(1)(B) appears to have been affected by defendants' apparent ability to satisfy all of the claimed damages in full. There, there was no suggestion of a finite pool of funds. In comparison, the damages, if any, recoverable in the present case may revolve around a fund insufficient to satisfy all plaintiffs' claims. This line of argument aside, however, in view of the previously mentioned example given in the Advisory Committee's Note, maintenance of this suit under Rule 23(b)(1)(B) would not be inappropriate.

In accordance with the above, an Order will be entered certifying the proposed class under Rule 23(b)(1)(B).

## ORDER

AND NOW, TO WIT, this 6th day of January, 1983, for the reasons stated in the foregoing Memorandum, IT IS ORDERED as follows:

1. Plaintiffs' motion for class action certification is *granted* under Fed.R.Civ.P. 23(b)(1)(B);

2. Plaintiffs are certified as the representatives of the following class:

All persons including corporations, partnerships, trusts or other similar entities, except any third party defendant, who on December 1, 1976 owned Capital First Corporation (formerly Capital Equipment and Leasing Corporation) nine percent (9%) subordinated debentures due 1982.