**Cecil McCLENDON, Don Vandertulip, Jimmie Catharn, and Konrad Trojanir, on their own and on behalf of all others similarly situated, Plaintiffs,**

v.

**The CONTINENTAL GROUP, INC., a New York corporation incorporated in 1913; Continental Can Company, Inc., a Delaware corporation; the Continental Group, Inc., a New York corporation incorporated in 1982; and KMI Continental Inc., a New York corporation, Defendants.**

Civ. No. 83–1340.

United States District Court,
D. New Jersey.

Oct. 21, 1986.

Davis, Barnhill & Galland, Plotkin & Jacobs, Ltd., Chicago, Ill., Siff, Newman, Rosen & Parker, P.C., Newark, N.J., Daniel P. McIntyre, Pittsburgh, Pa., for plaintiffs.

Bell, Boyd & Lloyd, Buchanan Ingersoll, P.C., Washington, D.C., Williams, Caliri, Miller & Otley, Wayne, N.J., for defendants.

Miller, Cohen, Martens & Ice, Southfield, Mich., Tomar, Seliger, Simonoff, Adourian & O'Brien, Haddonfield, N.J., for third party defendant.

## OPINION

SAROKIN, District Judge.

The four named plaintiffs, all former employees of the defendant who allege that they were laid off pursuant to a national program of defendant to avoid pension liability, now move for class certification. The court grants plaintiffs' motion.

## BACKGROUND

The facts of this case are presented in detail in the court's prior opinion concerning defendant's motion to dismiss the complaint and for summary judgment. *McClendon v. The Continental Group*, 602 F.Supp. 1492 (D.N.J.1985). For purposes of class certification, the relevant facts are as follows.

The named plaintiffs were employed at two plants, Passaic, New Jersey, and Chicago, Illinois. They allege that they were laid off pursuant to a national "capping" program, designed by defendant to cut "unfunded pension liability" under certain "Magic Number" pension programs. The rules regarding "Magic Number" pensions, as well as the rules on layoffs, were the same at all Continental plants in the nation. Plaintiffs present evidence, consisting of defendant's internal documents, that Continental considered the expansion of liability on these pensions to be a national problem; that the capping program was designed at the national level to combat this problem; that the program was implemented and monitored by defendant on a nationwide basis, through the use of the "Bell" computer system; and that defendant instituted a nationwide policy of secrecy regarding the program.

Continental states that the nationwide decline in the can industry forced the company to reassess its business practices. Continental claims that responses necessarily were localized, due to the varying nature of market conditions in different geographic regions. Continental, based in large part on affidavits of individual plant managers, claims that personnel decisions were made on the local level depending on profitability considerations peculiar to each plant.

Plaintiffs in this case moved on February 21, 1985 to certify the following class:

> All participants in the Continental Pension Plan who suffered or will suffer a break in pension service subsequent to December 1, 1977 as a result, in whole or in part, of the Capping Program, but excluding persons whose break in pension service occurred while they were employed at one of the following plants: West Mifflin, Pennsylvania (numbers 72 and 478); Los Angeles, California (number 11); or Fairfield, Alabama (number 411).[1]

## DISCUSSION

Under Federal Rule of Civil Procedure 23, plaintiffs must show that the proposed

---

**1.** Separate actions have been brought challenging implementation of the capping program at these locations.

class meets the four prerequisites of Rule 23(a) and satisfies one of the tests under Rule 23(b). The court, obeying the command of the Third Circuit, articulates its reasoning of the contested aspects of the Rule 23 analysis. *See Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3d Cir.1985).[2]

### 1. *Typicality—Rule 23(a)(3)*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This prerequisite mandates that the named plaintiffs present the common questions, found to exist under Rule 23(a)(2), on behalf of the class members. *See Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.1985); *Zeffiro v. First Pennsylvania Banking & Trust Co.,* 96 F.R.D. 567, 569 (E.D.Pa.1983). The named plaintiffs' claims need not be identical to those of the class members, *see Eisenberg,* 766 F.2d at 786; the representatives' claims must arise from the same event or course of conduct by the defendant, and be based on the same legal theory, as the claims of the class members. *See Weiss v. York Hospital,* 745 F.2d 786, 806 n. 34 (3d Cir. 1984); *Vargas v. Calabrese,* 634 F.Supp. 910, 919 (D.N.J.1986).

■ The claims of the named plaintiffs and the class members arise from the same course of conduct by defendant, the nationwide capping program.[3] Furthermore, all of the claims are based on the same legal theories—ERISA and RICO.

**2.** Continental does not contest that the proposed class meets the "numerosity" requirement of Rule 23(a)(1) nor the "commonality" requirement of Rule 23(a)(2). The proposed class consists of thousands of members and the application of the nationwide capping program is a question common to the class.

Plaintiffs, in their original brief, submit that the proposed class qualifies for certification under all of the branches of Rule 23(b). In their response, however, plaintiffs do not contest Continental's arguments that Rule 23(b)(3) is the only conceivable ground for certification. The court agrees with Continental that Rules 23(b)(1)(A), (b)(1)(B), and (b)(2) are inapplicable to the proposed class.

Thus, the court finds that the proposed class satisfies the requirements of Rule 23(a)(3).

### 2. *Representation—Rule 23(a)(4)*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The Third Circuit has stated:

Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class.

*Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

The court finds plaintiffs' counsel to be qualified and experienced in class action litigation in this area.

Continental contends that the United Steelworkers (USW) funding of this litigation renders plaintiffs inadequate representatives of the proposed class. Continental argues that the USW is a potential defendant in this action (because the USW negotiated the collective bargaining agreement containing the pension and layoff provisions) and thus that the plaintiffs interests are necessarily antagonistic to those of other class members. Finally, defendants argue that the named plaintiffs, as older workers on the verge of vesting, cannot adequately represent younger workers.

**3.** Continental argues that variations in personnel decisions around the country make the named plaintiff's claims atypical of those of class members at other plants. For purposes of 23(a)(3), the court looks only at whether the representatives' claim concerning the "common questions" are typical of the claims of the class. Defendants' contention, in reality, is that individual questions of plant-specific policy "predominate" over common questions of the national program. This argument is more properly considered, then, in the court's discussion of Rule 23(b)(3), *infra.*

■ Continental's arguments fail. First, third party funding, in and of itself, does not make the named plaintiffs antagonistic to the interests of the class. *See Georgia State Conference of Branches of NAACP v. Georgia*, 99 F.R.D. 16, 33–34 (S.D.Ga.1983); *Wolkenstein v. Reville*, 539 F.Supp. 87, 91 (W.D.N.Y.), *aff'd* 694 F.2d 35 (2d Cir.1982), *cert. denied*, 462 U.S. 1105, 103 S.Ct. 2452, 77 L.Ed.2d 1332 (1983); *Brame v. Ray Bills Finance Corp.*, 85 F.R.D. 568, 578–79 (N.D.N.Y.1979). Failure to sue USW does not make plaintiffs antagonistic to the interests of the class—defendant has presented no evidence linking USW to creation or implementation of the capping program. Finally, the named plaintiffs are not inadequate representatives because of their age and seniority. If anything, the fact that plaintiffs were so close to vesting would make them more zealous in pursuing the class interest because they have a significant personal stake. Furthermore, that the named plaintiffs stand to be rehired earlier than other class members, due to seniority, does not make them inadequate representatives— the court is capable of policing any future settlement regarding relief that may compromise younger class members.

Thus, the court finds that proposed class meets the requirements of Rule 23(a)(4).

### 3. Rule 23(b)(3)

Rule 23(b)(3) states:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition ... the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The court discusses these two tests.

### a. Predominance

Under Third Circuit case law, this court first must identify the legal and factual issues, both common and diverse, and then determine whether the common issues predominate. *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756 (3d Cir.), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974) (setting forth guidelines for appellate review of Rule 23(b)(3) certification); *see also Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 448 (3d Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978) (following Katz).

Plaintiff's ERISA and RICO claims center on Continental's capping program, a program designed, implemented, monitored, and enforced on a national level. The capping program did not determine whether class members would be laid off nor which members would be laid off. The program, according to plaintiffs, designated class members as permanently laid off at a particular time so as to avoid layoff or Magic Number pensions. This alleged scheme of discriminatory activity forms the basis for plaintiffs' complaint and presents an issue common to all class members.

This national program, however, had to be put in place at each Continental plant. Individual questions exist as to the influence that capping program directives had on actual layoff decisions in particular plants. Continental asserts that individual questions exist as to the intent of local decisionmakers and whether the capping program was the "but for" cause of plaintiffs' layoffs. Furthermore, individual questions exist as far as damages.

■ Rule 23(b)(3) requires only that common issues predominate, not that they are the *only* issues. Resolution of common issues need not be conclusive or determinative of liability. *See In re School Asbestos Litigation*, 789 F.2d 996, 1010 (3d Cir. 1986); *Glictronix Corp. v. American Tel. & Tel. Co.*, 603 F.Supp. 552, 584 (D.N.J. 1984); *cf. Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir.1985) (stating that presence of individual questions of plaintiffs' reliance does not prevent predominance finding). The predominance requirement is best viewed in practical terms:

There may be cases in which class resolution of one issue or a small group of them will so advance the litigation that they may fairly be said to predominate.

*In re School Asbestos Litigation,* 789 F.2d at 1010; *see* C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure,* 1778 at 528 (2d ed. 1986) (stating that certification is proper "where common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication"). Applying these guidelines, the court finds that the questions common to the class predominate over the questions affecting only individual members.

█ Defendants contend that individual issues pertaining to each Continental plant should prevent certification. Defendants' argument necessitates some review of the merits of the case—one of Continental's principal defenses is lack of local implementation of the capping program. Although a court should not decide the merits of a case on a motion for class certification, *see Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974); *In re Data Access Systems Securities Litigation,* 103 F.R.D. 130, 137 (D.N.J. 1984), a court may address whether plaintiffs are asserting a claim which, assuming its merits, will satisfy the requirements of Rule 23. *See Glictronix Corp.,* 603 F.Supp. at 589.

█ Continental overstates the relevance of local decisionmaking to plaintiffs' claim. Plaintiffs do not deny that local market conditions affected manning levels and forced layoffs. Nor do plaintiffs deny that the seniority rules of the collective bargaining agreement governed the choice of which individuals would be laid off. Local variation as to these factors are not pertinent to plaintiffs' claims. Plaintiffs' allegation is that the national capping program—a program designed to meet the nationwide problem of increasing unfunded pension liability dictated the *timing* of the layoffs and prevented plants from rehiring laid off workers. The focus is on the intent of the national policymakers in manipulating market-influenced manpower decisions to avoid pension liability. Local differences are relevant only to the extent of resistance to the timing of layoffs.

Furthermore, plaintiffs present substantial evidence to support their claim of nationwide implementation. Plaintiffs submit Continental documents directing plants on capping procedures and specifying cut off points. Other Continental documents explain the nationwide computer system by which the program was to be monitored and enforced. Thus, plaintiffs' claim, assuming its merits, warrants a finding that common issues predominate. Such a finding, and resulting certification do not prevent Continental from showing that a particular plant did not follow the program. *See, e.g., Blackie v. Barrack,* 524 F.2d 891, 906 n. 22 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

█ The order of proof at trial further supports a finding of predominance. The court sees parallels between this case and Title VII race or sex discrimination class actions challenging a discriminatory pattern or practice. *Cf. McClendon v. Continental Group, Inc.,* 602 F.Supp. 1492, 1504 (D.N.J.1984) (noting legislative history of ERISA indicating that Section 510 plaintiffs have "the same rights to go to court" as Title VII plaintiffs). Such cases are litigated in two stages. First, plaintiffs must show the discriminatory pattern or practice; upon such a showing, prospective relief is available. In the second stage, defendant has the burden of showing that particular plaintiffs were not harmed by the discriminatory practice. *See Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 772–73, 96 S.Ct. 1251, 1267–68, 47 L.Ed.2d 444 (1976); *see also Cooper v. Federal Reserve Bank,* 467 U.S. 867, 104 S.Ct. 2794, 2799–800, 81 L.Ed.2d 718 (1984) (describing the two stage process). The first stage centers on issues common to the class—the existence and effect of the capping program. Individual variation will

arise at the second stage, dealing with relief. As a general matter for Rule 23(b)(3) classes, individual questions at the relief stage should not block certification. *See, e.g. Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 456 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978).

For the above reasons, the court finds that questions common to all class members predominate over questions affecting only individual members.

b. Superiority

Rule 23(b)(3) sets out four pertinent factors for consideration of whether a class action is superior to other available methods of adjudication: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

■ Continental claims that plant-specific class actions, perhaps coupled with consolidated discovery before the Judicial Panel on Multidistrict Litigation, is a superior method of adjudication. Upon examination of the above factors, the court finds the nationwide class action to be superior.

Class members have no interest in controlling the prosecution of individual actions around the country. As plaintiffs point out, Continental has sought to prevent class members from learning of the program, through a centrally directed program of secrecy and through protective orders in litigation. Consequently, many class members will learn of the program only through this litigation. Furthermore, even if class members know of the capping program, the history of this suit and the other plant-specific litigation indicates that individual plaintiffs will face great resistance. Individual class members have an interest in commonly facing Continental's resolute defense to this action.

Plant specific challenges to the program have been brought in Alabama, California, and Pennsylvania. These actions show that plant-wide adjudication is possible, but not superior. Contrary to defendants' position, the existence of these actions, even though based on different legal theories, does not suggest that individual class members have an interest in separate adjudication. As stated, the complexity and expense of these cases suggest that individual class members have an interest in a single adjudication.

A single forum for adjudication of challenges to this national program is desirable. Efficiency is best served by litigating once the many issues surrounding conception, implementation, monitoring, and enforcement of the capping program. Plantwide actions would require repetitive adducement of the same evidence.[4] Furthermore, plant-specific adjudication would involve evidence of *nationwide* variations in implementation. In all plant-specific cases plaintiffs will allege the existence of a national scheme, as they have done thus far; Continental will counter with the testimony of plant managers from around the country that this is not so. Presentation of this evidence once, in a single forum, is clearly desirable.

Any difficulties in managing this class action should not prevent certification. As described above, courts have managed nationwide discrimination suits challenging a centralized practice. By following the model established in *Franks,* this action can be managed in an efficient and fair way. Any savings in the manageability of plantwide suits are offset by the increased efficiency of litigating these issues once and the increased fairness to class members.

---

4. Continental's argument that the District of New Jersey is not a desirable location misses the point. The question is whether a single forum is desirable; if so, New Jersey has been determined previously to be an appropriate venue.

Thus, the court finds that the proposed class action is superior to other available methods of adjudication.

CONCLUSION

The court grants plaintiffs' motion for certification of the proposed class under Rule 23(b)(3).