**Myrna G. SNIDER, individually and on behalf of those similarly situated**

v.

**UPJOHN CO.; Ray T. Parfet, Jr.; Theodore Cooper, M.D., Ph.D.; Lawrence C. Hoff; and Jacob C. Stucki, Ph.D.**

Civ. A. No. 86–3625.

United States District Court, E.D. Pennsylvania.

April 15, 1987.

---

Harold E. Kohn, Stuart H. Savett, Philadelphia, Pa., for plaintiff.

Thomas M. Kittredge, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court are plaintiff's motion for class certification and defendants' motion for summary judgment. For the reasons stated herein, plaintiff's motion for class certification will be granted only as to Count I (claims under Sections 10(b) and 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a)) of the amended complaint. The class certification motion will be denied as to Counts II (common law fraud claim) and III (common law negligent misrepresentation claim) of the amended complaint, and those counts will be dismissed. Defendants' motion for summary judgment will be denied.

## I. FACTS

Plaintiff's claim alleges that the defendants made material misrepresentations and omissions in public statements including an April 29, 1986 news release ("the news release") and a Form 8–K filed on the same day with the Securities and Exchange Commission ("SEC"). These public statements concerned the results of Upjohn Co.'s ("Upjohn") study of the efficacy and safety of the drug minoxidil in the treatment of male pattern baldness. Plaintiff contends that the alleged misrepresentations and omissions caused the price of Upjohn stock to increase. Plaintiff claims that in purchasing Upjohn stock she and the proposed class members relied on Upjohn's public statements, or are deemed to have relied on such statements through the integrity of the market. Plaintiff asserts that when the alleged misrepresentations and omissions were disclosed to the public on June 17, 1986, the value of the Upjohn stock decreased. Plaintiff seeks compensatory damages from defendants for the money she and the members of the proposed class lost in their Upjohn securities trading from the date of the news release and filing of the Form 8–K, April 29, 1986, to the date of the public disclosure of the alleged misrepresentations and omissions, June 17, 1986.

Plaintiff seeks certification of a class action on behalf of all persons who purchased the common stock of Upjohn from April 29, 1986 through June 17, 1986, and held such stock on June 17, 1986, excluding defendants and persons acting in concert with them, members of the immediate families of the individual defendants and the officers and directors of the corporate defendants.

Minoxidil is an antihypertensive peripheral vasodilator that has been marketed by Upjohn for several years, under the brand name of Loniten, as a treatment to be taken orally for severe high blood pressure. One of the common side effects of this drug, when it is taken orally, is the elongation, thickening and enhanced pigmentation of fine body hair on the temples, between the eyebrows, between the hairline and the eyebrows, on the sideburn area of the upper lateral cheek, and on the back, arms, legs and scalp.

In 1983, Upjohn began year-long studies and testing of the safety and efficacy of topically-applied minoxidil solutions in the treatment of male pattern baldness at 27 research centers throughout the United States. The purpose of these studies was to assess the efficacy and safety of applying 2% and 3% minoxidil solutions directly to the scalp for treatment of male pattern baldness. On December 19, 1985, following analysis of the data from the 27 research centers, Upjohn applied for Food and Drug Administration ("FDA") approval to market a 2% topical minoxidil solution, under the name Rogaine, for treatment of male pattern baldness. The new drug application is still under review by the FDA.

Two days after the news release Upjohn's common stock price rose to $174.25 per share and continued to increase after a 2-for-1 stock split on May 2, 1986, to a high of $103.75 per share on June 13, 1986, and was at $101.625 per share on June 16, 1986.

On May 15, 1986, Upjohn received a letter ("the letter") from William V. Purvis, Assistant to the Director of the FDA's Division of Drug Advertising and Labeling. In that letter, Mr. Purvis characterized the Upjohn news release as "product labeling" within the meaning of Section 201(m) of the Federal Food Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 321 (1982). The letter went on to state that as labeling, the news release was false and misleading within the meaning of Section 502(a) of the FDCA, 21 U.S.C. § 352(a) (1982). That section governs product misbranding. On

June 17, 1986, the letter was released to the public. On that day Upjohn's common stock closed at $96.75 per share. This action was commenced on June 18, 1986, the day after the letter was publicized.

Plaintiff is apparently the only proposed class member that has been deposed and to that extent the court is limited to examining the basis for plaintiff's claim. Moreover, other than plaintiff's amended complaint, the parties have presented no other claims from proposed class members. As a result, the court is not in the best possible position to compare plaintiff's cause of action with allegations of other investors. The parties, however, agree that plaintiff's deposition transcript is dispositive of the present motions.

## II. DISCUSSION

■ Class actions are a "particularly appropriate and desirable" way to resolve securities law claims and in a doubtful case courts should err in favor of allowing the class. *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). Courts may approve class actions only after a "rigorous analysis" ensuring compliance with Fed.R.Civ.P. 23. *General Telephone Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Glick v. E.F. Hutton & Co., Inc.*, 106 F.R.D. 446, 447 (E.D.Pa.1985).

When seeking class certification, plaintiff bears the burden of proving that the action satisfies all four threshold requirements set forth in Fed.R.Civ.P. 23(a) and also falls within one of the three categories of Rule 23(b). *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 163, 94 S.Ct. 2140, 2145, 40 L.Ed.2d 732 (1974); *Weiss v. York Hosp.*, 745 F.2d 786, 807 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). Rule 23(a) provides:

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

A plaintiff relying on Rule 23(b)(3) must also meet two additional criteria: (1) questions of law or fact common to class members must predominate over any questions affecting individual members; and (2) the class action device must be superior to any other method of adjudication. Fed.R.Civ.P. 23(b)(3).

### A. *Numerosity (Rule 23(a)(1))*

Rule 23(a)(1) permits class action only when "the class is so numerous that joinder of all class members is impracticable." Fed.R.Civ.P. 23(a)(1). No definite standard exists concerning a magic number satisfying the numerosity requirement, nor must plaintiff allege the exact number or identity of class members. *Dirks v. Clayton Brokerage Co. of St. Louis, Inc.,* 105 F.R.D. 125, 131 (D.Minn.1985) (*citing* C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1762, at 562 (1972)); *In re Data Access Sys. Sec. Litig.,* 103 F.R.D. 130, 137 (D.N.J. 1984). It is proper for the court "to accept common sense assumptions in order to support a finding of numerosity." *Wolgin v. Magic Marker Corp.,* 82 F.R.D. 168, 171 (E.D.Pa. 1979); *accord, Peil v. Speiser,* 97 F.R.D. 657 (E.D.Pa.1983).

Plaintiff estimates the class size as "at least several hundred and perhaps several thousand persons." Plaintiff's motion for class certification at 8. Defendants have not contested this estimate. The existence of that many class members would render joinder impracticable. The numerosity requirement, Rule 23(a)(1), is satisfied.

### B. *Common Questions of Law or Fact (Rule 23(a)(2))*

Courts have permissivly applied the commonality requirement of Rule 23(a)(2) to a "large variety of factual circumstances including allegations of conspiracy and secu-

rities fraud." *In re Data Access Sys., supra,* 103 F.R.D. at 137 (*citing Peil v. National Semiconductor Corp.,* 86 F.R.D. 357, 367 (E.D.Pa.1980), *cert. denied,* —— U.S. ——, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985)). The misrepresentations and non-disclosures alleged by plaintiff are contained primarily in the April 29, 1986 news release. The allegations of the amended complaint revolve around the "common nucleus" of law and fact that is the classic hallmark of a securities fraud class action. *Cohen v. Uniroyal, Inc.,* 77 F.R.D. 685, 690 (E.D.Pa.1977).

Cases containing such a common nucleus have been held to be "prime candidates for class action treatment." *In re Caesars Palace Sec. Litig.,* 360 F.Supp. 366, 398 (S.D.N.Y.1973). Commonality is not defeated by slight differences in class members' positions, *Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976), or because "all of the allegations of the class do not fit together like pieces in a jigsaw puzzle." *Green v. Wolf Corp.,* 406 F.2d 291, 300 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 25 L.Ed.2d 766 (1969).

In ascertaining whether plaintiff satisfies Rule 23(a)(2), the court must refrain from considering the merits of the substantive claims. *Eisen, supra,* 417 U.S. at 177–78, 94 S.Ct. at 2152–53. At this juncture the court is limited to verifying the existence of common questions. Plaintiff has met her burden. The common questions include: (1) whether defendants violated the federal securities laws, and (2) the measure of damages.

### C. *Typicality (Rule 23(a)(3))*

The claims of the representative parties must be typical of the claims of the class. Fed.R.Civ.P. 23(a)(3). The "typicality" requirement is a safeguard against interclass conflicts, insuring that the named plaintiff's interests are more or less coextensive with those of the class. *Sley v. Jamaica Water and Utilities, Inc.,* 77 F.R.D. 391, 394 (E.D.Pa.1977). In this re-

spect the typicality requirement overlaps with the Rule 23(a)(4) requirement since it ensures that absent class members will be adequately represented.

The typicality requirement is met if the plaintiff's claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory. *Zeffiro v. First Pennsylvania Banking & Trust Co.*, 96 F.R.D. 567 (E.D.Pa.1983). As this court stated:

> The heart of this requirement is that plaintiff and each member of the represented group have an interest in prevailing on similar legal claims. Assuming such an interest, particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render his or her claims atypical.

*Id.* at 569–70. *See also,* H. Newberg, *Newberg on Class Actions*, § 1115(b) (1985).

The United States Court of Appeals for the Third Circuit has observed that "typical" does not mean "identical," thus the focus of the typicality requirement entails an inquiry as to whether the plaintiff's individual circumstances are markedly different or whether the legal theory upon which the claims are based differs from that upon which the claims of the other class members will be based. *Eisenberg, supra,* 766 F.2d at 786; *Weiss, supra,* 745 F.2d at 809 n. 36.

Plaintiff has alleged that defendants violated Section 10(b) of the 1934 Act and Rule 10b–5 by disseminating false and misleading material information and by failing to disclose other material information, all of which affected and artifically inflated the price of Upjohn stock. Plaintiff contends that defendants' alleged wrongdoing affected the class as well as the named plaintiff, and the defendants did not take any actions that are unique to the named plaintiff. This being so, the "essence" of the named plaintiff's allegations concerning liability will afford adequate representation of the interests of the members of the class, despite any "unique" defenses to the named plaintiff's claims that may not be applicable to some class members but not others. *See Peil v. Speiser, supra,* 97 F.R.D. at 659–60; *Zeffiro, supra,* 96 F.R.D. at 570. Plaintiff argues that she has satisfied the typicality requirement since her claim arose out of the same conduct and rests on the same theory of liability as the claims of the members of the class.

Defendants argue that plaintiff's claims are not "typical" of those of the class because her case presents a "unique" defense in that she allegedly did not rely on the news release. Defendants contend that this alleged lack of reliance renders her claim "atypical."

It is the view of the court that the defense of plaintiff's alleged lack of reliance is an affirmative defense which goes to the merits of the case and therefore should not be considered in deciding a motion for class action certification. *In re Data Access Sys., supra,* 103 F.R.D. at 139 (*citing Eisen, supra,* 417 U.S. at 178, 94 S.Ct. at 2153).

Even if it were appropriate to consider the merits of the action at this early juncture, defendants' claim of lack of reliance would still be insufficient to preclude certification. The case is premised on a theory of fraud on the market. Plaintiff states in her deposition, "I was reading all this publicity ... about minoxidil ... but then when it began to look so good and jump that way ... then I finally bought it." Deposition Transcript of Adelaide Briskman at 13. This statement tends to indicate that she relied on the marketplace's reflection of the stock. Additionally, to the extent that a lack of reliance defense will be asserted, it will probably be asserted against all members of the class.

Two recent cases in this district are on point and hold that a named plaintiff's possible lack of reliance in a misrepresentation or nondisclosure case based on the theory of fraud on the market will not defeat the typicality of his or her claim. *Fickinger v.*

*C. I. Planning Corp.*, 103 F.R.D. 529 (E.D. Pa.1984); *Peil v. Speiser, supra.*

Since this is a fraud on the market case, it is unlikely that the defense of plaintiff's alleged lack of reliance in her individual claim could "conceivably become the focus of the entire litigation and divert much of ... [her] attention from the suit as a whole." *Zenith Laboratories, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir.), *cert. denied*, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976).

Plaintiff has satisfied the typicality requirements.

### D. Adequacy of Representation (Rule 23(a)(4))

In considering plaintiff's adequacy as a class representative the third circuit has held that this requirement entails: (1) the qualification and competence of plaintiff's attorney; and (2) whether plaintiff's interests are antagonistic to those of the class. *Weiss, supra*, 745 F.2d at 811; *see, e.g., Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir.1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). Defendants do not question the quality and experience of plaintiff's counsel. Instead, they contend that the atypicality of plaintiff's claim makes her interest antagonistic to those of the class. The court's resolution of the typicality question, *see Discussion* section C, *supra*, also resolves this issue.

Defendants also contend that plaintiff is a nominal plaintiff who has given unfettered discretion to her attorney and lacks knowledge about many of the most basic matters at stake in the present case. Defendants also claim that plaintiff's "status as a potential defense witness on the merits makes her uniquely ill-suited to represent a class." Defendants' reply memorandum at 23. The court rejects these contentions. The third circuit has recognized that class counsel, not the named plaintiff, directs and manages the class action. *Greenfield v. Villager Industries, Inc.*, 483 F.2d 824, 832 n. 9 (3d Cir.1973). This principle is especially true in a complex

securities fraud case. *Seiffert v. Green*, No. 81–1956, slip op. at 17 (E.D.Pa. January 13, 1987) [Available on WESTLAW, DCT database].

The court finds plaintiff has satisfied the adequacy of representation requirement.

### E. Predominance and Superiority (Rule 23(b)(3))

#### 1. Predominance

Plaintiff's claim also meets the Rule 23(b)(3) predominance requirement. The only individual questions involve issues of reliance and damages. Their importance fails to outweigh the common question of whether defendants made materially false and misleading statements and failed to disclose material information concerning the efficacy and safety of minoxidil. In determining whether common questions predominate, the court's inquiry is directed primarily toward the issue of liability. *Bogosian, supra*, 561 F.2d at 456. The common questions and their predominance over individual claims are manifested in the fact that if plaintiff and every class member were each to bring an individual action, they would still be required to prove the existence of the alleged activities of the defendants in order to prove liability.

#### 2. Superiority of Class Action Method

In this case the class action device is superior to other methods of adjudication. Joinder of all of the class members would be impracticable and duplicative individual trials would impose similar burdens on the litigants and the courts. The utility and necessity of presenting the claims asserted in this action through the class action method is great since "a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf." *Green v. Wolf Corp., supra*, 406 F.2d at 296.

### F. The Pendent State Law Claims

■ Common law fraud and negligent misrepresentation claims, alleged in Counts

II and III of the amended complaint, raise issues which are personal to each individual plaintiff. In particular, an essential element of such common law claims is that plaintiff affirmatively relied on the misrepresentation alleged. *See, e.g., Peil v. Speiser,* No. 82–1289, Court Transcript at 19–20 (E.D.Pa. May 3, 1985), *aff'd,* 806 F.2d 1154 (3d Cir.1986) (direct reliance is an element of a common law securities fraud claim).

In the instant case, individual questions of reliance predominate over any common questions with respect to the fraud and negligent misrepresentation claims, precluding certification pursuant to Rule 23(b)(3). *See Blackie, supra,* 524 F.2d at 907; *Peil v. National Semiconductor Corp., supra,* 86 F.R.D. at 367 n. 8.

Since plaintiff depends on the fraud on the market theory there are special reasons in this case why the pendent state law claims should not be certified for class action treatment. Fraud on the market theories of reliance have not been developed in state courts, *Rosenberg v. Digilog, Inc.,* [1985–86 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,274 at 91,895 (E.D.Pa.1985), and the Supreme Court of the United States has cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (footnote omitted). Claims involving legal theories novel to state law should, therefore, be left to state courts.

The pendent state law claims alleged in Counts II and III of the amended complaint will be dismissed.

III. CONCLUSION

Accordingly, the court will grant plaintiff's motion to certify a class action as to Count I of the amended complaint and to designate plaintiff Adelaide Briskman as the representative of the class. Counts II and III of the amended complaint will be dismissed.

An appropriate Order will be entered.

ORDER

AND NOW, TO WIT, this 15th day of April, 1987, for the reasons stated in the accompanying Memorandum, following a thorough consideration of plaintiff's motion for class certification under Federal Rule of Civil Procedure 23 and defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and the responses thereto, and upon complete review of the memoranda in support and opposition, IT IS ORDERED as follows:

1. Plaintiff's motion for class certification is hereby *granted* as to Count I of her amended complaint, but hereby *denied* as to Counts II and III of her amended complaint;

2. Counts II and III of the amended complaint are hereby *dismissed;*

3. Defendants' motion for summary judgment is hereby *denied;*

4. Plaintiff Adelaide Briskman is hereby *certified* to sue as the representative party on behalf of all persons who purchased the common stock of Upjohn Co. from April 29, 1986 through June 17, 1986, and held such stock on June 17, 1986, excluding defendants, their immediate family members, persons acting in concert with the defendants in the fraud alleged in the complaint and the officers and directors of the corporate defendant;

5. The law firm of Kohn, Savett, Klein & Graf, P.C. is hereby *designated* as counsel for the class; and

6. The plaintiff class representative shall give the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort, pursuant to Fed.R.Civ.P. 23(c)(2).