W.P., et al., Individually and as Representatives of a Class pursuant to Fed. R.Civ.P. 23(a) and 23(b)(2), Plaintiffs,

v.

Deborah PORITZ, Attorney General of New Jersey; Jeffrey S. Blitz, Atlantic County Prosecutor; Charles R. Buckley, Acting Bergen County Prosecutor; Stephen G. Raymond, Burlington County Prosecutor; Joseph P. Audino, Acting Camden County Prosecutor; Stephen D. Moore, Cape May County Prosecutor;

Neil S. Cooper, Acting Cumberland County Prosecutor; Clifford J. Minor, Essex County Prosecutor; Harris Y. Cotton, Gloucester County Prosecutor; Carmen Messano, Hudson County Prosecutor; Sharon B. Ransavage, Hunterdon County Prosecutor; Marryann K. Bielamowicz, Mercer County Prosecutor; Robert W. Gluck, Middlesex County Prosecutor; John Kaye, Monmouth County Prosecutor; W. Michael Murphy, Jr., Morris County Prosecutor; Daniel J. Carluccio, Ocean County Prosecutor; Ronald S. Fava, Passaic County Prosecutor; Ronald A. Epstein, Salem County Prosecutor; Melaine B. Campbell, Acting Somerset County Prosecutor; Dennis O'Leary, Sussex County Prosecutor; Edward Neafsey, Acting Union County Prosecutor; and John J. O'Reilly, Warren County Prosecutor, Defendants.

Civil Action No. 96–97.

United States District Court,
D. New Jersey.

March 15, 1996.

---

Susan L. Reisner, Public Defender by Michael Buncher, Chief Counsel, Special Hearings Unit, Office of the Public Defender, Trenton, New Jersey, for Plaintiffs.

Deborah T. Poritz, Attorney General by Rhonda S. Berliner-Gold, Deputy Attorney General, Trenton, New Jersey, for Defendants.

## OPINION

BISSELL, District Judge.

This matter comes before the Court on the plaintiffs' motion to certify a class action. The present action was filed on January 16, 1996. The plaintiffs seek to enjoin the defendants from enforcing the Community Notification Act, N.J.S.A. 2C:7-1 et seq., (Megan's Law). (First Amended Complaint, hereinafter "Compl." at 9-10)

Plaintiff's claim that Megan's Law violates the *ex post facto* and double jeopardy clauses of the United States Constitution. (Compl., ¶¶ 35, 39) By Order of this Court on January 16, 1996, and subsequent Orders, the defendant has been enjoined from "issuing or disseminating in any manner Tier II or Tier III notifications regarding plaintiffs" until April 19, 1996 or until 10 days after the Third Circuit has issued its opinion on the appeal of *Artway v. Attorney General et al.*, 81 F.3d 1235 (3rd Cir.1996), whichever first occurs.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, and other statutory authority invoked in the Complaint, including 42 U.S.C. § 1983 and the Declaratory Judgment Act (28 U.S.C. § 2201).

## FACTS

Each of the named plaintiffs has been convicted of a sex related offense as the result of a plea of guilty. (Compl., ¶ 8) Currently, they are living in their respective communities within the State of New Jersey. (Compl., ¶¶ 9-30) The named plaintiffs have individually been classified under Megan's Law at either the Tier II or Tier III Level. (Plaintiff's Br. at 6-8). The offenses for which the named plaintiffs were convicted occurred prior to the enactment of Megan's Law. (*Id.*)

■ Once a registrant is notified of his tier classification under Megan's Law, he

must be afforded some judicial review before public notification. *Doe v. Poritz,* 142 N.J. 1, 107, 662 A.2d 367 (1995). The Supreme Court of New Jersey has established an "Outline of Procedure for Hearings on Objections to Megan's Law Tier 2 and Tier 3 Classifications and Manner of Notification Determinations." (Plaintiff's Br., App. A) The parties first have a pre-trial conference, at which time the judge may render a final determination. (*Id.* at A–5) If a hearing is required, then the judge will schedule a date 10–14 days thereafter and conduct an *in camera* proceeding. (*Id.*) At the conclusion of the hearing the judge must make a final determination. (*Id.*)

Originally, it was proposed that members of the private bar represent the registrants during these proceedings. *See* Maureen Castellano *Who Will Blink First?; Bar Balks at Pro Bono; Wilentz Doesn't Budge,* N.J.L.J., Oct. 30, 1995 at 1. Because of some difficulties with such *pro bono* representation, a plan was developed under which the majority of these individuals are represented by the New Jersey Public Defender. *See* Michael Booth, *Public Defender to Take Over Megan's Law Representation,* N.J.L.J., Nov. 6, 1995 at 4; Russ Bleemer, *Complaints Mount as Megan's Law Hearings Begin,* N.J.L.J. Oct. 23, 1995 at 1.

As a result, the Office of the Public Defender has sought emergent relief from this Court on three separate occasions, as well as in proceedings before Judges Politan and Simandle. The focus of these proceedings has been the same: to enjoin the classification and notification process while the Third Circuit decides the *ex post facto* and double jeopardy constitutional issues in *Artway v. Attorney General, et al.* In each of these cases, this relief has been granted.

The plaintiffs now seek to certify a class which consists of:

All persons required to register as a sex offender [*sic* ] pursuant to N.J.S.A. 2C:7–1 et seq. and whose offenses were committed prior to October 31, 1994, the effective date of the New Jersey Registration and Community Notification Laws, and who have been or will be classified as a tier II or tier III offender.

(Complaint at ¶ 5). They also seek injunctive relief for the class.

## *ANALYSIS*

### I. *Certification of the Class Action*

The decision concerning class certification is committed to the broad discretion of the District Judge. *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 245 (3d Cir. 1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). The plaintiffs have the burden of showing class certification is proper pursuant to Fed.R.Civ.P. 23. *Id.* To sustain a class certification, the named plaintiffs must first satisfy the requirements of Fed.R.Civ.P. 23(a). *In re Data Access Systems Securities Litigation,* 103 F.R.D. 130, 131 (D.N.J.1984).

Rule 23(a) provides that:

One or more members of a class may sue . . . as representative parties on behalf of all only if

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims . . . of the representative parties are typical of the claims . . . of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

If the requirements of 23(a) are met, then the plaintiffs must show that they are in one of the categories defined by Rule 23(b). The plaintiffs here purport to bring this action pursuant to Rule 23(b)(2) because

(2) the party opposing the class has acted or refuses to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . .

Fed.R.Civ.P. 23(b)(2).

#### A. *Numerosity*

The numerosity requirement demands that the class be so large that joinder of all members would be "impracticable."

Fed.R.Civ.P. 23(a). In the context of class actions, "impracticability" does not mean impossibility "but only the difficulty or inconvenience of joining all members of the class." *Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 406 (D.N.J.1990) (*citing Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913–14 (9th Cir.1964)). This standard may be applied more flexibly in cases where injunctive relief alone is sought. *Weiss v. York Hospital,* 745 F.2d 786, 808 (3d Cir.1984).

■ At the present time there are approximately 3380 registrants under Megan's Law, of which up to 2000 may eventually be classified at the Tier II or Tier III levels. (Compl., Exh. A; Plaintiff's Br. at 44).[1] These individuals reside in areas throughout the state. (*Id.*) As each registrant is notified of his or her preliminary classification at Tier II or Tier III, he or she has a limited window prior to final classification and notification in which to petition the U.S. District Court for relief. As a result, the Court has been, and in the future undoubtedly will be, required to entertain numerous new complaints, motions to add plaintiffs, and applications for temporary restraining orders and preliminary injunctions, on short notice. The continuation of this process for additional plaintiffs is impracticable, cumbersome, and may not insure protection to all who may be entitled to it.

### B. Commonality

■ The commonality requirement is satisfied "if there are some questions of law or fact common to the class." *Zinberg,* 138 F.R.D. at 406 (*citing Vargas v. Calabrese,* 634 F.Supp. 910, 918 (D.N.J.1986)). These claims do not have to be exactly the same as long as they are not in conflict. *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.1985), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). If "class members can assert ... a single common complaint" it is unnecessary that they "have all suffered ac-

tual injury; demonstrating that all class members are *subject* to the same harm will suffice." *Baby Neal for and by Kanter v. Casey,* 43 F.3d 48, 56 (3d. Cir.1994) (emphasis in original).

■ In this case, the members of the proposed class are all subject to the same type of judicial proceeding and community notification, at either Tier II or Tier III. If the proceedings or notifications violate the *ex post facto* or double jeopardy provisions of the United States Constitution for one of the proposed class members, then that is true for all. Although the proceeding itself is fact specific, this prong dictates that there be common questions of law *or* fact, but not necessarily both. *Id.* The federal constitutional issues of law are common and dominant in the present action.

### C. Adequacy of Representation

■ When plaintiffs' interests are not antagonistic to those of other class members and plaintiffs' attorneys are qualified, the adequacy of representation requirement is met. *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3d Cir.1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). The defendant has the burden of demonstrating that the representation would be inadequate. *In re Asbestos School Litigation,* 104 F.R.D. 422, 430 (E.D.Pa.1984) (*citing Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir.1982), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982)).

■ Defendant argues that because some registrants have not contested the notification they are not adequately represented. (Defendant's Br. at 4). However this does not make the positions of the class *antagonistic* to these members. It cannot be seriously argued that any of the registrants under Megan's Law would prefer to have their lives disrupted by notification rather than remain anonymous.[2]

---

**1.** At oral argument and in defendants' papers, several different numbers regarding those persons currently subject to Tier II or Tier III classification were presented to the Court. Even the lowest of these demonstrated sufficient numeros-

ity to justify a class action. *See Weiss,* 745 F.2d at 808, n. 35.

**2.** Defendant further argues that notice should be given to allow class members to "opt out". A

### D. Typicality

 Rule 23(a)(3) requires that plaintiffs' interests "are more or less coextensive with those of the class." *In re Asbestos School Litigation,* 104 F.R.D. at 429 (*citing Sley v. Jamaica Water & Util.,* 77 F.R.D. 391, 394 (E.D.Pa.1977)). The requirement is intended to insure that the class action is "fully, fairly, and vigorously prosecuted." *Id.* Claims are typical if the plaintiffs' claims arise from the same event or course of conduct as the claims of the entire class. *Zinberg,* 138 F.R.D. at 407. "[A]ctions requesting declaratory and injunctive relief to remedy conduct directed at the class clearly fit this mold to satisfy the typicality requirements of Rule 23(a)." *Baby Neal,* 43 F.3d at 58.

 The elements that allegedly create the named plaintiffs right to relief: their status as convicted sex offenders residing in New Jersey; the date of their convictions prior to the effective date of Megan's Law; their present or imminent classification and notification under Tier II or III; are definitionally typical of the class. These elements are the primary relevant considerations in determining the constitutional issues that are now before the Third Circuit and this Court.

### E. Generally Applicable Acts

 Finally the plaintiffs must satisfy Rule 23(b), in this case 23(b)(2), and show that the defendant has "acted or refused to act on grounds generally applicable to the class." Fed.R.Civ.P. 23(b)(2). The Attorney General has acted, as is her duty, to enforce the provisions of Megan's Law. Although there may be differences in the factual set-

tings of the classification hearings or the nature of the notification, they are being prosecuted as part of a general policy and program to enforce the statute. The County Prosecutors presumably are implementing the statute in a uniform manner.[3]

For the reasons set forth above, this Court certifies the plaintiff class as requested and described above.

### II. Rooker–Feldman Abstention

 A federal district court is not empowered to review the decision of the highest court of a state; that power rests solely with the United States Supreme Court. *ASARCO Inc. v. Kadish,* 490 U.S. 605, 622, 109 S.Ct. 2037, 2048, 104 L.Ed.2d 696 (1989). This is commonly referred to as the *Rooker–Feldman* doctrine, after the cases of *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Ct. of App. v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

" 'If the constitutional claims presented to a United States district court are inextricably intertwined' with the merits of a judgment rendered in the state court, 'then the district court is in essence being called upon to review the state-court decision. This the district court may not do.' "

*Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 1533, 95 L.Ed.2d 1 (1987) (Marshall, J. concurring) (citing *Feldman,* 460 U.S. at 483–84 n. 16, 103 S.Ct. at 1315–16 n. 16). If the issues are inextricably intertwined, then the federal court lacks subject matter jurisdiction to hear such claims. *Port Auth. P.B.A. v. Port Auth. of N.Y. & N.J.,* 973 F.2d 169, 177 (3d. Cir.1992).

---

23(b)(2) class action does not require notice to the class. *Bolton v. Murray Envelope Corp.,* 553 F.2d 881 (5th Cir.1977); *see also Katz v. Carte Blanche Corp.,* 496 F.2d 747, 756 (3d Cir.). The Court may at its discretion require notice under Rule 23(d)(2). "In most cases, however, 'notice would add little or nothing.' " *Wetzel,* 508 F.2d at 256 (citing J. Moore Federal Practice at 1152 (2d ed. 1974)).

The possible, although unlikely, desire for some individuals to opt out cannot alone support the decision to require notice because in a 23(b)(2) action, members of the class do not have the right to opt out. *Wetzel,* 508 F.2d at 249. Any unfairness caused by this prohibition is "out-

weighed by the purposes behind class actions." *Id.* Furthermore, the present class is being certified because of the current status of the *Artway* case and the need for preliminary injunctive relief. Depending upon the Third Circuit's decision in *Artway* the duration of this class may be brief.

**3.** At oral argument on March 13, 1996 regarding the class certification question, accelerated consideration was given to plaintiffs' motion to file a Second Amended Complaint which would, *inter alia,* add all County Prosecutors as defendants. Those persons are indispensable parties; therefore, that motion was granted.

The Third Circuit has very recently revisited *Rooker–Feldman* abstention in the case of *FOCUS v. Allegheny Cty. Ct. of Common Pleas,* 75 F.3d 834 (3d Cir.1996). The Third Circuit found that *Rooker–Feldman* does not apply where the plaintiffs were not parties to the adjudication of the "intertwined" issues. *Id.,* 75 F.3d at 840–41. In *Valenti v. Mitchell,* the Third Circuit stated "we have found no authority which would extend the *Rooker–Feldman* doctrine to persons not parties to the proceedings before the state supreme court ..." *Valenti v. Mitchell,* 962 F.2d 288, 297 (3d Cir.1992).

▮ It must be clearly stated that this Court is not being asked to review the decision of the Supreme Court of New Jersey in *Doe v. Poritz.* Instead, this Court is presented with the well-articulated precedent of Judge Politan's decision in *Artway v. Attorney General of New Jersey,* 876 F.Supp. 666 (D.N.J.1995) which was decided prior to *Doe.* Even more importantly, this Court will soon be bound by the decision of the Third Circuit when it is announced in the *Artway* case, whether or not it is in agreement with *Doe v. Poritz.* In summary, this entire proceeding focuses upon the state of federal decisional law on the *ex post facto* and double jeopardy claims underlying it.

*III. Younger Abstention*

▮ The defendants contend that this Court should abstain from exercising its jurisdiction in accordance with the doctrine described in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Under *Younger,* a federal court should refrain from enjoining state court proceedings. *Id.* at 43, 91 S.Ct. at 750. This doctrine has its foundation in principles of equity, comity, and federalism. *Id.* at 43–45, 91 S.Ct. at 750–751. A court must base its actions on "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* at 44, 91 S.Ct. at 750–51.

▮ *Younger* abstention is appropriate whenever there is 1) an ongoing state proceeding; in which 2) an important state interest is implicated; and 3) the plaintiff can obtain review of the constitutional claims in the state court. *Hansel v. Town Court of Springfield, N.Y.,* 56 F.3d 391, 393 (2d Cir. 1995); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). Such an abstention is applicable in a civil as well as criminal context where the noncriminal proceedings are closely related to a criminal action. *Middlesex County,* 457 U.S. at 432, 102 S.Ct. at 2521.

Although the Third Circuit has not ruled on the issue, some other Courts of Appeals have measured the availability of review of constitutional claims merely in terms of procedural or technical infirmity rather than substantive law. *Hansel,* 56 F.3d at 394. These courts have found that the fact that the state Supreme Court "has already rejected similar arguments ... does not mean those courts have deprived a plaintiff of the *opportunity* to make the argument." *Duty Free Shop v. Administracion De Terrenos De Puerto Rico,* 889 F.2d 1181, 1183 (1st Cir.1989). The plaintiff may take his case through the state system and ultimately petition the Supreme Court of the United States if necessary. *Id.* This rationale has been followed even where there was binding precedent from the state supreme court. *Dubinka v. Judges of Superior Court,* 23 F.3d 218, 224 (9th Cir.1994).

▮ By contrast, other courts, including the District of New Jersey, have taken a broader view of *Younger* and required that there be "an adequate opportunity for *redress* of their constitutional claims" in the state forum. *Bongiorno v. Lalomia,* 851 F.Supp. 606, 613 (D.N.J.) (emphasis added), *aff'd without opinion,* 39 F.3d 1168 (3d Cir. 1994). Where binding state precedent makes submitting those same constitutional issues to a state forum futile, then a federal court should not decline to exercise its jurisdiction. *Tolbert v. City of Memphis,* 568 F.Supp. 1285, 1289–90 (W.D.Tenn.1983); *See also Mastin v. Fellerhoff,* 526 F.Supp. 969, 971 (S.D.Ohio 1981); *McKinstry v. Genesee*

*County Circuit,* 669 F.Supp. 801, 805–06 (E.D.Mich.1987).

■ The doctrine of abstention established in *Younger* is predicated upon the belief that state courts are equally capable of adjudicating federal constitutional issues in cases before them. *Younger,* 401 U.S. at 44, 91 S.Ct. at 750–51. However, abstention was not intended to create a regime whereby a federal court would be effectively bound by state court precedent regarding the U.S. Constitution.

■ The New Jersey Supreme Court has already ruled in *Doe* and rejected the *ex post facto* and double jeopardy challenges to Megan's Law[4]. *Doe,* 142 N.J. at 40–77, 662 A.2d 367. The state courts involved in the plaintiffs' proceedings are all bound by the decision of the New Jersey Supreme Court. The ineffectiveness of raising the present constitutional issues in those proceedings under Megan's Law has been made patently clear by the New Jersey Appellate Division in *In the Matter of G.B.,* 286 N.J.Super. 396, 669 A.2d 303 (App.Div.1996). The panel of the Appellate Division which has been assigned to hear *all* Megan's Law appeals stated:

> "We need not address registrant's constitutional arguments. The Supreme Court in *Doe* rejected these arguments."

*Id.* at 7. The *ex post facto* and double jeopardy arguments which G.B. raised in that case and which the plaintiffs raise here will not, as a practical matter, receive any meaningful review in a New Jersey court.

If *Younger* is predicated solely upon a technical ability to raise constitutional arguments, then this Court must abstain. *See, e.g. Dubinka,* 23 F.3d at 224. However, if *Younger* recognizes the actual ability to secure the protection of constitutional rights, then there must be a realistic opportunity to

deal with the merits of a constitutional claim in either forum. Otherwise, claimants' rights would only be protected if they are in the extremely small minority of cases which are granted *certiorari* by the United States Supreme Court. Given the existence of *Doe* and the pronouncement of the Appellate Division panel which would hear any appeal by the plaintiffs, to abstain in this case would be to value the form of the constitutional claim over the substance of the constitutional right.[5]

■ Finally, abstention would be inappropriate under either construction of *Younger* as this case falls within an exception to the doctrine. A federal court should not abstain "under extraordinary circumstances where the danger of irreparable loss is both great and immediate." *Younger,* 401 U.S. at 45, 91 S.Ct. at 751. This serves to heighten the standard preliminary injunction analysis which merely requires some showing of irreparable harm. *Id.*

In the instant action the plaintiffs face imminent Tier II and Tier III notification. This could encompass the distribution of their names, addresses, descriptions, photographs, automobile descriptions, license plate numbers, and places of employment to those living near the plaintiffs' homes or jobs. (*See e.g. R.T. v. Poritz*). Even without considering the potential to incite vigilante activity, dissemination of this information could severely disrupt the lives of the plaintiffs and reduce their ability to maintain gainful employment. *See e.g.* Susan Edelman, *Megan's Law Ricochets,* The Bergen Record, Feb. 2., 1996 (Compl., Exh. D). Such a harm is not only irreparable, but is clearly both "great and immediate" as contemplated by *Younger.* Therefore this Court should not abstain from exercising its jurisdiction.[6]

---

**4.** As discussed in Section II, *supra,* this case does not constitute a review of the findings of the *Doe* Court.

**5.** The absence of a realistic opportunity for plaintiffs to litigate their constitutional claims in state classification proceedings distinguishes the case at bar from *Wilton v. Seven Falls,* — U.S. —, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Furthermore, *Wilton* holds that the decision to entertain or dismiss a declaratory judgment action

under 28 U.S.C. § 2201 is left to the trial court's discretion.

**6.** At oral argument, the Court's attention was directed for the first time herein to the federal anti-injunction act, 28 U.S.C. § 2283. Because the applicability of that statute to the case at bar is not presently certain, the Court will address that issue if and when it is presented in a subsequent motion.

*IV. Preliminary Injunction*

Much of the Court's analysis in this area has previously been elaborated in its oral opinion of January 26, 1996 in this case. The Court reiterates and incorporates those determinations by reference. However, a brief review is also warranted.

*A. Standard for Preliminary Injunction*

 The Third Circuit standard governing a preliminary injunction is as follows:

> In considering a motion for preliminary injunctive relief, a court must carefully weigh four factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of such relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief will be in the public interest.

*SI Handling Systems, Inc. v. Heisley,* 753 F.2d 1244, 1254 (3d Cir.1985); *see also Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186, 197–198 (3d Cir.1990); *Klitzman, Klitzman and Gallagher v. Krut,* 744 F.2d 955, 958–959 (3d Cir.1984); *Continental Group v. Amoco Chemicals Corp.,* 614 F.2d 351, 356–57 (3d Cir.1980). Preserving the status quo of an action pending final determination is the primary purpose of a preliminary injunction. *In re Arthur Treacher's Franchisee Litigation,* 689 F.2d 1150 (3d Cir. 1982). A plaintiff must establish both items (1) and (2) above in order to obtain a preliminary injunction. *Morton v. Beyer,* 822 F.2d 364, 367 (3d Cir.1987).

*B. Reasonable Likelihood of Success on the Merits*

 In order to obtain a preliminary injunction, plaintiffs must show a reasonable likelihood of success on the merits. In this case, this standard is judged not only in light of this Court's interpretation of the law, but on the nature of *stare decisis.* The claims put forth by the plaintiffs with regard to the *ex post facto* and double jeopardy claims are substantially identical to those advanced by the plaintiff in *Artway v. Attorney General of New Jersey,* 876 F.Supp. 666 (D.N.J.1995). In fact those arguments have been expressly adopted by the plaintiffs. (Plaintiffs' Br. at 10).

In *Artway* Judge Politan found Megan's Law to be unconstitutional on *ex post facto* grounds. *Artway,* 876 F.Supp. at 692. This case was argued before the Third Circuit last Fall and an opinion is forthcoming in the near future. Given *Artway,* it is reasonably likely that the plaintiffs will succeed on the merits; not only because of the strength of their constitutional claims, but also because this Court may have binding precedent to follow with regard to adjudicating them.

*C. Irreparable Harm*

As has already been discussed in Section III, *supra,* the plaintiffs have more than met the showing of irreparable harm necessary to obtain preliminary injunctive relief.

*D. Balance of Harms*

Although the goal of Megan's Law, the protection of the public from sexual offenders, is undeniably important, the defendants will not be appreciably harmed in the near future. Proceedings before the courts of the State of New Jersey leading to final tier classifications may proceed uninterrupted by any preliminary injunction here. Only community notification at either the Tier II or Tier III levels is being restrained. The police should be notified immediately, both under the Tier I provisions of Megan's Law and under the terms of the injunction, regarding the whereabouts of the plaintiffs. Defendants have also made no showing that any of the plaintiffs pose a specific threat beyond the general statistical likelihood of recidivism for sexual offenders.[7] Coupled with the limited time frame of the injunction, this should minimize any negative impact on the defendants.

*E. Public Interest*

The public has a profound interest in protecting the potential victims of sexual offenders. However the public has an equally vital

---

**7.** *See W.S. v. Poritz,* Civil Action No. 96–491, slip op. at 13 (D.N.J. Feb. 15, 1996).

concern that the rights which all persons enjoy under our Constitution be fully protected. As Judge Politan stated in *Artway:*

> While the Court recognizes the broad powers of the legislature in protecting the health, safety, and welfare of citizens, it must not lose sight of its judicial function even in the face of public outcry. It is this Court's function and responsibility to protect the constitutional rights of the minority or the individual. That role and task becomes most immediate and onerous in situations where legislatures encroach individual constitutional rights in the name of the common good. Plaintiff contends that Megan's Law presents such a crisis.

876 F.Supp. at 685. From the foregoing discussion it is apparent that only by entering the present preliminary injunction can this Court preserve the *status quo* and adequately protect both of these societal values.

The injunction will be entered in the form and scope previously employed in this case. However, the alternative fixed date of April 19, 1996 has been removed. While such a date was relevant for a temporary restraining order, it is much less material for the preliminary injunction in this case. The reexamination of all aspects of this action can only take place when the Third Circuit's decision in *Artway* is released, in the near future. Furthermore, all parties are protected by the provisions of this Court's Order which permits a motion for modification or other relief upon five business days' notice.

### CONCLUSION

For the reasons stated above, the motion of the plaintiffs to certify a class is granted, and their motion for preliminary injunctive relief is also granted.

### ORDER CERTIFYING A PLAINTIFF CLASS AND CONTINUING PRELIMINARY INJUNCTION

This matter having been opened to the Court by Michael Buncher, Esquire, Special Hearings Unit, Office of the Public Defender, attorney for plaintiffs and in the presence of Rhonda S. Berliner–Gold, Deputy Attorney General appearing on behalf of defendant Deborah Poritz, Attorney General, State of New Jersey; and in the presence of representatives of the proposed co-defendant County Prosecutors; and based upon the papers considered and oral argument being heard, and for good cause shown,

It is on this 14th day of March, 1996, **ORDERED** that:

1. The caption in this matter is hereby amended to read as set forth above, and any pleadings or other papers filed or served hereafter shall employ the caption stated above, except that the defendants may hereafter be referred to as Deborah Poritz, et al.;

2. This Order amends and supersedes the terms of prior injunctive Orders entered in this action;

3. A class is hereby certified pursuant to Fed.R.Civ.P. 23(a) and (b)(2) which consists of:

> All persons required to register as sex offenders pursuant to N.J.S.A. 2C:7–1 et seq. whose offenses were committed prior to October 31, 1994, the effective date of the New Jersey Registration and Community Notification Laws, and who have been or will be classified as tier II or tier III offenders;

4. No formal notice to members of the class as contemplated by Fed.R.Civ.P. 23 shall issue at this time;

5. Leave is granted to plaintiffs to file a Second Amended Complaint which, *inter alia,* joins each of the County Prosecutors of the State of New Jersey as defendants;

6. The defendants, their officers, agents, servants, employees and attorneys, those persons under their general supervision, and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, shall be restrained and enjoined from issuing or disseminating in any manner Tier II or Tier III notifications regarding members of the Class under N.J.S.A. 2C:7–1 *et seq.* (Megan's Law) during the pendency of this Preliminary Injunction;

7. Tier I notice may be given within seven days of the date of this Order for any member of the Class;

8. Defendants are not hereby restrained from proceeding with conferences and hearings before the Courts of the State of New Jersey, pursuant to Megan's Law, which may proceed to the point of final determination of the tier designation and manner of community notification for any member of the plaintiff Class;

9. Civil Action No. 95–98 (*R.T. v. Christine Todd Whitman at al.*) be and hereby is consolidated with the within action, the plaintiff therein is declared to be a member of the plaintiff Class, this Court's Orders of January 2, 1996 and February 26, 1996 in that action be and the same hereby are vacated, plaintiff R.T. is entitled to all the relief afforded to Class members in the present Order, and the $100 security posted in Civil Action No. 95–98 shall be treated hereafter as additional security in the case at bar;

10. The amount of $100 posted by the plaintiffs with the Clerk of the District Court, pursuant to Fed.R.Civ.P. 65(c), as security herein shall remain with the Clerk as security for this Preliminary Injunction;

11. This Preliminary Injunction shall expire 10 days from and after a decision by the United States Court of Appeals for the Third Circuit in the matter of *Artway v. Attorney General of New Jersey, et al.,* 81 F.3d 1235 (3rd Cir.1996);

12. Upon five business days notice, any party may move either to extend, modify, terminate or vacate any provision of this Order or to seek a dismissal of this action upon any ground, including any alleged absence of jurisdiction or power of this Court to grant relief to plaintiffs;

13. This Preliminary Injunction is immediately effective as of 4:00 p.m. on March 13, 1996;

14. This Order and the Opinion filed in conjunction therewith shall not be filed under seal; however all other papers heretofore and hereafter filed in this matter shall remain and be under seal until further Order of the Court;

15. The entry of this Preliminary Injunction is immediately appealable by any party;

16. The defendant's oral motion for a stay of this Order pending appeal is denied.