Tami M. **STEWART**

v.

**ASSOCIATES CONSUMER DISCOUNT COMPANY, Associates Insurance Company and Associates Financial Services Company, Inc.**

**No. CIV. A. 97–CV–4678.**

United States District Court, E.D. Pennsylvania, Philadelphia Division.

Oct. 27, 1998.

Wayne M. Thomas, Douglas A. Abrahams, Kohn, Swift & Graf, P.C., Philadelphia, PA, Joseph H. Jones, Jr., Williamson, Friedberg & Jones, Pottsville, PA, for Plaintiff.

Robert A. Nicholas, Sean M. Halpin, Reed Smith Shaw & McClay, LLP, Philadelphia, PA, George A. Platz, Robert M. Hatch, Lovell, White & Durrant, Chicago, IL, for Defendant.

### *MEMORANDUM AND ORDER*

JOYNER, District Judge.

This suit is once again before the Court upon motion of the plaintiff, Tami Stewart for class action certification. In accordance with the analysis set forth below, the motion shall be granted.

### *Factual Background*

This action arises out of a loan agreement which plaintiff entered into with Defendant Associates Consumer Discount Company on November 30, 1994. At that time, Ms. Stewart, a resident of Schuylkill County, Pennsylvania, owed approximately $23,000 on her home mortgage to Schuylkill Savings and Loan Association and another $23,000 in installment credit obligations to various other lenders, including $1,000 to defendant Associates Consumer Discount Company ("ACDC") which she was seeking to consolidate. In reliance upon ACDC's purported representations that plaintiff could refinance her existing ACDC loan with all of her other debts at a rate that was better than any rate which could be obtained from a competing lender and that its closing costs were lower than those of any of its competitors, plaintiff agreed with defendant to refinance the first mortgage on her home in Schuylkill Haven, PA, along with her other debts at a rate of 9.8% per year for ten years to be repaid at the rate of $421 per month.

However, unbeknownst to plaintiff and despite defendant's repeated assurances that the proceeds from the refinancing would be used to pay off her existing mortgage to Schuylkill Savings as well as her other debts, the loan was classified as a consumer loan with an interest rate of 15.08% and was not used to pay off plaintiff's mortgage. The loan was instead secured by a second mortgage lien against plaintiff's residence and the principal amount, which was set solely by defendant, was in excess of the amount needed to repay plaintiff's home improvement, motor vehicle and other consumer credit debts while not being sufficient to retire all of those obligations along with her existing mortgage. Plaintiff avers that when she tried to question ACDC about these issues, she was told only that the company computed interest in a different manner for principal and finance charges which caused a higher interest rate to be shown.

The complaint alleges that these lending practices and defendant's requirement that plaintiff purchase "Lender's Security Insurance" and $100,000 of "Credit Life Insurance" through its affiliate, Associates Insurance Company, are unlawful, fraudulent and part of ongoing racketeering activity and a conspiracy between the defendants. As a result of defendant's conduct, plaintiff alleges that she has now incurred additional debt and financial obligations which she cannot pay. Ms. Stewart seeks actual, statutory, treble and punitive damages on behalf of herself and all other persons similarly situated for Fraud and Deceit, Unlawful Finance Charges in violation of 41 P.S. § 101, et seq., Unjust Enrichment, Conspiracy, Breach of Warranty, violations of the Racketeer Influenced and Corrupt Organizations Act, ("RICO"), 18 U.S.C. §§ 1962(c) and (d), violations of the Truth in Lending Act, 15 U.S.C. § 1600, et seq., and for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–2, et seq. Plaintiff now moves to certify this case as a class action pursuant to Fed. R.Civ.P. 23.

*Class Action Standards*

Plaintiff seeks to certify as a plaintiff class:

All residents of the Commonwealth of Pennsylvania who, between July 1, 1991 and this date, entered into a loan agreement with Associates Consumer Discount Company which was secured by a residential mortgage.

It is well-established that to obtain class certification, plaintiff must satisfy all of the requirements of Fed.R.Civ.P. 23(a) and come within one provision of Rule 23(b). *Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 624 (3rd Cir.), *aff'd* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The prerequisites for certification of a class action are mandatory and the failure to establish just one element bars class certification. *Rodger v. Electronic Data Systems Corp.,* 160 F.R.D. 532, 537 (E.D.N.C.1995).

Specifically, Rules 23(a) and (b) state that:

**(a) Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**(b) Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications

or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

■ The decision concerning class certification is committed to the broad discretion of the district court, which may not consider the merits of the case but must instead assume the truth of the allegations in the complaint. *Medicare Beneficiaries' Defense Fund v. Empire Blue Cross Blue Shield,* 938 F.Supp. 1131, 1139 (E.D.N.Y.1996); *W.P. v. Poritz,* 931 F.Supp. 1187, 1192 (D.N.J.1996); *Freedman v. Arista Records, Inc.,* 137 F.R.D. 225, 226 (E.D.Pa.1991). *See Also: Arenson v. Whitehall Convalescent and Nursing Home, Inc.,* 164 F.R.D. 659, 661 (N.D.Ill.1996).

■ In moving for class certification, the movant has the burden of proving that all four elements of Rule 23(a) have been met and that at least one of the requirements of Rule 23(b) has been satisfied. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163, 94 S.Ct. 2140, 2145, 40 L.Ed.2d 732 (1974); *Georgine v. Amchem, supra.,* 83 F.3d at 624; *Elliott v. ITT Corporation,* 150 F.R.D. 569, 575 (N.D.Ill.1992) citing, *inter alia, General Telephone Company of Southwest v. Falcon,* 457

U.S. 147, 161, 102 S.Ct. 2364, 2372–2373, 72 L.Ed.2d 740 (1982). *See Also: In Re Data Access Systems Securities Litigation,* 103 F.R.D. 130, 131 (D.N.J.1984). The requirements under Rule 23 should be given a liberal rather than a restrictive construction. *In Re A.H. Robins Company, Inc.,* 880 F.2d 709, 740 (4th Cir.), *cert. denied,* 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989); *Rodger v. Electronic Data Systems Corp.,* 160 F.R.D. 532, 535 (E.D.N.C.1995). All of the enumerated requirements must be satisfied by the proponent of certification before a class action determination may be made. *Waldo v. North American Van Lines, Inc.,* 102· F.R.D. 807, 811 (W.D.Pa.1984), citing, *inter alia, Scott v. University of Delaware,* 601 F.2d 76, 84, n. 14 (3rd Cir.1979); *Peil v. National Semiconductor Corp.,* 86 F.R.D. 357, 364 (E.D.Pa.1980). However, a class may be certified even though the initial definition includes members who have not been injured or do not wish to pursue claims against the defendant. *Elliott v. ITT,* 150 F.R.D. at 575.

### A. *Numerosity Requirement*

Rule 23(a)(1) first dictates that the "class [be] so numerous that joinder of all members is impracticable." This prerequisite, however, does not require any particular· number or require that joinder of all members be impossible,[1] so long as a good faith estimate of the number of class members is provided. *Arenson v. Whitehall Convalescent and Nursing Home, Inc.,* 164 F.R.D. at 662; *Rodger v. Electronic Data Systems Corp.,* 160 F.R.D. at 535; *Freedman v. Arista Records,* 137 F.R.D. at 228. *See Also: Manning v. Princeton Consumer Discount Company,* 533 F.2d 102, 104 (3rd Cir.1976); *Sandlin v. Shapiro & Fishman,* 168 F.R.D. 662, 666 (M.D.Fla.1996); *Moskowitz v. Lopp,* 128 F.R.D. 624, 628 (E.D.Pa.1989). In determining whether the litigation is properly certified as a class action, the issue is merely whether the representative plaintiff has demonstrated the probability of the existence of a sufficient number of persons similarly inclined and similarly situated to render the

class action device the appropriate mechanism for obtaining judicial determination of the rights alleged. *Dawes v. Philadelphia Gas Commission,* 421 F.Supp. 806, 813 (E.D.Pa.1976). In so doing, the Court is entitled to make common sense assumptions in order to support a finding of numerosity. *Patrykus v. Gomilla,* 121 F.R.D. 357, 360 (N.D.Ill.1988); *Snider v. Upjohn Co.,* 115 F.R.D. 536, 539 (E.D.Pa.1987). Finally, where the numerosity question is a close one, the trial court should find that numerosity exists, since the court has the option to decertify the class later pursuant to Rule 23(c)(1). *Rodger v. Electronic Data Systems Corp.,* 160 F.R.D. at 537.

Here, while the plaintiff's complaint is silent as to the number or approximate number of class members, plaintiff alleges in her Brief in Support of her Motion for Class · Action Certification that "[i]nformation recently produced by defendants reflects that Discount presently has 10,561 loans outstanding in Pennsylvania which are secured by a · mortgage." (Pl's Brief at p. 11). Plaintiff has also provided evidence that there are at least five other pending lawsuits in Pennsylvania involving facts and claims similar to those at issue in this matter and that defendants' lending practices have been the subject of investigation by banking authorities in several other states and of the United States. (Exhibits 1–25 to Pl's Reply Memorandum in Support of Motion for Class Certification). Defendants, in turn, do not contest plaintiff's allegations or the authenticity of her exhibits. Inasmuch as common sense dictates that the class here could well number into the thousands, we find that joinder of all would be impracticable and that the numerosity requirement has been satisfied.

### B. *Commonality Requirement*

Rule 23(a)(2) requires that there be questions of law or fact common to the class, although not all questions of law or fact raised need be in common. *Weiss v. York Hospital,* 745 F.2d 786, 808–809 (3rd Cir. 1984). The courts have permissively applied

---

1. In the context of class actions, "impracticability does not mean impossibility but only the difficulty or inconvenience of joining all members of

the class." *W.P. v. Poritz,* 931 F.Supp. at 1193; *Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 406 (D.N.J.1990).

the commonality requirement of Rule 23(a)(2) to a large variety of factual circumstances so that common questions have been found to exist in a wide range of contexts. *Rodger,* 160 F.R.D. at 537; *Moskowitz v. Lopp,* 128 F.R.D. at 628; *Snider v. Upjohn, supra.* at 539. Thus, the commonality requirement is satisfied if there are some questions of law or fact common to the class and the fact that there is some factual variation among class members' grievances will not defeat certification. *W.P. v. Poritz,* 931 F.Supp. at 1193; *Arenson v. Whitehall,* 164 F.R.D. at 663; *Rodger v. Electronic Data Systems Corp.,* 160 F.R.D. at 537.

 It should be noted that not all factual or legal questions raised in the litigation need be common so long as at least one issue is common to all class members; a sufficient nexus is established if the claim or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. *Sandlin v. Shapiro & Fishman,* 168 F.R.D. at 666. In ascertaining whether a plaintiff satisfies Rule 23(a)(2), the court must refrain from considering the merits of the substantive claims. Rather, at this juncture, the court is limited to verifying the existence of common questions of law or fact. *Moskowitz v. Lopp,* 128 F.R.D. at 629; *Snider v. Upjohn,* 115 F.R.D. at 539, both citing, *inter alia, Eisen v. Carlisle & Jacquelin,* 417 U.S. at 177–178, 94 S.Ct. at 2152–2153. A common nucleus of operative fact is typically found where the defendants have engaged in standardized conduct toward members of the proposed class. Claims arising out of standard documents present a classic case for treatment as a class action. *Arenson,* 164 F.R.D. at 664, citing *Chandler v. Southwest Jeep–Eagle, Inc.,* 162 F.R.D. 302, 308 (N.D.Ill.1995) and *Haroco, Inc. v. American National Bank & Trust Co.,* 121 F.R.D. 664, 669 (N.D.Ill.1988).

Applying these principles to the instant motion, we conclude that plaintiff has made a sufficient showing of commonality to pass through the second hurdle to class action certification. Indeed, the pleadings and evidence produced by the parties to date reflect that Ms. Stewart's claims in this action are very similar to the claims raised by the plaintiffs in those actions pending between Associates Consumer Discount Company and Associates Financial Services Company in the Courts of Common Pleas of Northampton, Allegheny, Philadelphia, and Lehigh Counties. Four of those five actions arise out of a series of occurrences which nearly mirror the factual allegations against the defendants in this case with regard to what are alleged to be the defendants' routine business practices in attracting borrowers, placing liens on those borrowers' residences, misrepresenting the interest rate(s) to be charged to borrowers, selling those borrowers additional, unnecessary insurance and charging them allegedly undisclosed borrowing and origination fees, closing costs and finance charges. (Pl's Exhibit 25 to Reply Brief in Support of Motion for Class Action Certification).

In addition, Ms. Stewart has also produced excerpts from Defendants' Marketing Operations Manual which, read in the light most favorable to her, tend to support, *inter alia,* her allegations that "defendants devised a scheme to create a permanent income stream from unsophisticated borrowers who had an equity interest in real property by making loans secured by a mortgage on such property for which there was no reasonable expectation of repayment … Pursuant to th[at] scheme, defendants seek to migrate existing finance customers toward home equity loans which typically have higher balances … [and] … [w]hen selecting the amount of the principal to be financed, defendants chose an unjustifiably large amount which was intended to insure that there was no reasonable expectation of full repayment …" (Pl's Complaint, ¶s15–29, 68–70). We therefore find that the element of commonality has been met.

### C. *Typicality Requirement*

The claims of the representative parties must also be typical of the claims of the class. Fed.R.Civ.P. 23(a)(3). The typicality requirement is a safeguard against interclass conflicts, insuring that the named plaintiff's interests are more or less coextensive with those of the class. *Snider v. Upjohn,* 115 F.R.D. at 539 citing *Sley v. Jamaica Water*

*and Utilities, Inc.,* 77 F.R.D. 391, 394 (E.D.Pa.1977). This requirement is intended to insure that the class action is fully, fairly and vigorously prosecuted. *W.P. v. Poritz,* 931 F.Supp. at 1194 also citing *Sley v. Jamaica,* at 394. The typicality requirement essentially merges with the commonality requirement since both relate to whether the claims of the representative plaintiff and those of the class are so similar as to insure that the class members' interests will be sufficiently protected. *Rodger v. Electronic Data Systems Corp.,* 160 F.R.D. at 538 citing *Stott v. Haworth,* 916 F.2d 134, 143 (4th Cir.1990) and *General Telephone Company of Southwest v. Falcon,* 457 U.S. at 157, n. 13, 102 S.Ct. at 2370, n. 13. Thus, because commonality and typicality are closely related, a finding of one often results in a finding of the other. *Arenson v. Whitehall,* 164 F.R.D. at 664.

■■■■ A plaintiff's claim is typical if it arises from the same event or course of conduct that gives rise to the claims of the other class members and is based on the same legal theory. *Moskowitz v. Lopp,* 128 F.R.D. at 630; *Snider v. Upjohn,* 115 F.R.D. at 540, both citing *Zeffiro v. First Pennsylvania Banking & Trust Co.,* 96 F.R.D. 567 (E.D.Pa.1983).[2] Typical, however, does not mean identical and thus the appropriate inquiry is into whether the plaintiff's individual circumstances are markedly different or whether the legal theory upon which the claims are based differs from that upon which the claims of the other class members will be based. *Eisenberg v. Gagnon,* 766 F.2d 770, 786–787 (3rd Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). *See Also: Weiss v. York Hospital,* 745 F.2d at 809, n. 36. Consequently, in order for the typicality requirement to be met, class representatives must not have an interest that is antagonistic to that of the class members and must have suffered similar injuries. *Rodger v. Electronic Data Systems Corp.,* 160 F.R.D. at 538.

In application of these standards, we likewise find that the requirement of typicality has also been satisfied. Again, as with the element of commonality, the pleadings and evidence thus far produced reflect that the claims which Ms. Stewart is pursuing in this action are strikingly similar to the claims raised by other plaintiffs in actions against these defendants in the Common Pleas Courts of Allegheny, Lehigh, Northampton and Philadelphia Counties and that, in light of the contents of defendants' marketing manual, newspaper articles and notes from the Senate Committee hearings, it is highly likely that there are potentially several thousand other Pennsylvania residents who may have similar claims against these defendants, albeit for different amounts of money. While each case is bound to differ somewhat with respect to the particular facts and circumstances under which the loans were made, plaintiff has adduced sufficient indicia that her claims are typical enough of the claims of the potential class members such that she would be an appropriate class representative. So saying, the typicality requirement has been met.

### D. *Adequacy of Representation*

■■■■ The fourth and final part of the Rule 23(a) test mandates that the plaintiff must fairly and adequately protect the interests of the class. *Weiss v. York Hospital,* 745 F.2d at 811. Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class. *Id.,* citing *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3rd Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Sandlin v. Shapiro & Fishman, supra.,* at 668; *Snider v. Upjohn,* 115 F.R.D. at 541. As to this element it is the defendant who bears the burden of proving inadequacy of representation. *Moskowitz v. Lopp,* 128 F.R.D. at 636; *Fickinger v.*

---

**2.** Specifically, the Court in that case reasoned:

The heart of this requirement is that plaintiff and each member of the represented group have an interest in prevailing on similar legal claims. Assuming such an interest, particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render his or her claims atypical. *Zeffiro,* 96 F.R.D. at 560–570.

*C.I. Planning Corp.,* 103 F.R.D. 529, 533 (E.D.Pa.1984).

█ In this case, it is the plaintiff's position that she has no interests antagonistic to those of the other members of the proposed class which she seeks to represent and she submits that she is prepared to vigorously pursue this matter so as to redress the wrongs perpetuated upon herself and the other class members. In addition, plaintiff's counsel have produced affidavits and lists of the numerous other, previous class actions in which they have been involved. In view of this evidence and given that the defendants nowhere challenge the adequacy of plaintiff's or her counsel's representation, we conclude that the fourth element of Rule 23(a) has been satisfied.

### E. *Requirements under Fed.R.Civ.P. 23(b)*

As noted above, if the Rule 23(a) criteria are satisfied, the court must also find that the class fits within one of the three categories of class actions defined in Rule 23(b). *In re Prudential Insurance Co. of America Sales Practices Litigation,* 148 F.3d 283, 309 (3rd Cir.1998). Plaintiff here is moving for certification pursuant to Fed.R.Civ.P. 23(b)(3), which requires "that the questions of law or fact common to the members of the class predominate over any questions affecting individual members, and that a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy."

█ In determining whether common questions predominate, the court's inquiry is directed primarily toward the issue of liability. *Moskowitz v. Lopp,* 128 F.R.D. at 636; *Snider v. Upjohn,* 115 F.R.D. at 541, both citing *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 456 (3rd Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). In considering whether common questions of law and fact predominate under Rule 23(b)(3), the common issues need not be dispositive of the entire litigation. *Elliott v. ITT Corporation,* 150 F.R.D. at 577.

The predominance factor requires that the court ascertain the existence of a group which is more bound together by a mutual interest in the settlement of common questions than it is divided by the individual members' interest in the matters peculiar to them. *Id.* The common questions and their predominance over individual claims are manifested in the fact that if plaintiff and every class member were each to bring an individual action, they would still be required to prove the existence of the alleged activities of the defendants in order to prove liability. *Moskowitz,* at 636; *Snider,* at 541.

As to determining superiority, "the matters pertinent to the court's findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P.(b)(3). In this way, the court must balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication. *In Re Prudential, supra.,* 148 F.3d at 316.

█ Defendants here argue that common questions of neither fact nor law predominate over the questions affecting individual class members in that it will be necessary to individually analyze the particular circumstances and terms of every loan transaction between each putative class member and ACDC. (Def's Brief in Opposition to Motion for Class Certification, at pp. 10–11). We disagree.

Again, it appears from the newspaper articles, minutes from the Senate Committee on Banking, Housing and Urban Affairs and excerpts from the Associates' Marketing Operations Manual that ACDC specifically targeted its marketing efforts to borrowers with low to moderate income levels and who otherwise had difficulty obtaining credit from banks by, *inter alia,* sending "live checks" to those potential customers for immediate negotiation. It further appears that charging up to 10 points on new loans and 8 points on renewal loans, "upselling" loans from consumer loans to real estate loans secured by

liens against its customers' real property and of repeatedly refinancing existing loans through the "Save–A–Payoff Program" were part and parcel of defendants' regular business practices and that the employees of defendants' branch offices were strongly encouraged to utilize these practices in their dealings with borrowers. (See: Exhibits 1–19 to Pl's Reply Memorandum in Support of Motion for Class Certification). It is these business practices and the alleged practice of selling unnecessary life and credit insurance which Ms. Stewart predominantly challenges in this case and which other parties in at least four actions which are now pending in the Courts of Common Pleas of Allegheny, Lehigh, Northampton and Philadelphia Counties are challenging in their lawsuits, under such theories as violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1, *et seq.*, the Federal Truth in Lending Act, 15 U.S.C. § 1600, *et seq.*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*, fraudulent misrepresentation, fraudulent concealment, and intentional infliction of emotional distress. To be sure, each plaintiff and/or potential class member would be required to prove the facts, activities and business practices discussed above in order to prevail on these claims against the defendants. *See: Moskowitz,* and *Snider,* both *supra.* Accordingly, we conclude that the predominance factor has likewise been satisfied in this case.

We also conclude that the class action device is superior to other methods of adjudication in this case given that the potential number of class members is in the thousands. Clearly, joinder of all would be impracticable and duplicative individual trials would impose inordinate burdens on the litigants and the court. *Moskowitz,* 128 F.R.D. at 636 citing *Green v. Wolf Corp.,* 406 F.2d 291, 296 (2nd Cir.1968). We therefore find that the requirements of Rule 23(b)(3) are met in this action.

F. *Definition of the Class*

 Defendants also challenge the plaintiff's proposed class definition as being "hopelessly broad." While at first blush, a proposed class consisting of "all residents of the Commonwealth of Pennsylvania who, between July 1, 1991 and this date, entered into a loan agreement with Associates Consumer Discount Company which was secured by a residential mortgage" does appear broad, it is axiomatic that a class does not have to be so ascertainable that every potential member can be specifically identified at the commencement of the action. *Elliott v. ITT Corp.,* 150 F.R.D. at 575 citing *Joseph v. General Motors Corp.,* 109 F.R.D. 635, 639 (D.Colo.1986). Rather, the class description need only be sufficiently definite that it is administratively feasible for the court to ascertain whether a particular individual is a member of the class. Thus, a class may be certified even though the initial definition includes members who have not been injured or do not wish to pursue claims against the defendant. *Id.*

With this authority in mind and in view of the fact that Rule 23(c)(1) permits class certification orders to be conditional and to be altered or amended at anytime before a decision is rendered on the merits, we find plaintiff's class definition to be sufficiently definite to justify certification at this juncture. Should the course of further proceedings show this definition to be unworkable, any necessary modifications to the certification order may be made at the appropriate time.

For all of the foregoing reasons, the plaintiff's motion for class certification shall be granted in accordance with the attached order.

### ORDER

AND NOW, this day of October, 1998, upon consideration of Plaintiff's Motion for Class Certification and Defendants' Response thereto and for the reasons set forth in the preceding Memorandum Opinion, it is hereby ORDERED that the Motion is GRANTED and the plaintiff class is hereby certified and defined pursuant to Fed. R.Civ.P. 23(a)and (b)(3) as consisting of the following persons:

All residents of the Commonwealth of Pennsylvania who, between July 1, 1991 and this date, entered into a loan agreement with Associates Consumer. Discount

Company which was secured by a residential mortgage.

IT IS FURTHER ORDERED that plaintiff Tami M. Stewart is designated as the class representative and that the attorneys of record for the said named plaintiff are authorized to serve as counsel for the class in this action.

IT IS STILL FURTHER ORDERED that counsel for the parties are to submit to the Court within twenty (20) days of the date of this order a form of proposed order providing for notice to the class.

